# DEBTOR-IN-POSSESSION CREDIT AGREEMENT

This **DEBTOR-IN-POSSESSION CREDIT AGREEMENT** (this "DIP Credit Agreement") is dated as of August 2, 2026, and is between **Storj Labs Inc.** ("Storj"), and **INVENIAM CAPITAL PARTNERS, INC.,** a Delaware Corporation ("DIP Lender").

## WITNESSETH:

WHEREAS, on July 26, 2026 (the "Petition Date"), Storj filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of West Virginia (the "Bankruptcy Court"), Case No. 26-bk-0012 (DLB);

WHEREAS, Storj is continuing in possession of its assets and in the management of its business as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code;

WHEREAS, Storj has requested DIP Lender to provide financing as a senior priority creditor (the "DIP Credit Agreement") to Storj in the amount not to exceed $388,000 for the purposes described herein;

WHEREAS, DIP Lender is willing to enter into the DIP Credit Agreement available only upon the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein, Storj and DIP Lender agree as follows:

**2. Borrowing, Conversions, Renewals and Payments**.

(a) Subject to the terms and conditions set forth herein and the terms and conditions in the order approving the DIP Credit Agreement by the United States Bankruptcy Court for the Northern District of West Virginia ("DIP Financing Orde"), DIP Lender agrees to provide DIP financing in the amount of $388,000 ("DIP Financing").

(b) The DIP Financing made available to Storj through the DIP Financing shall be used as follows, subject to the DIP Financing Order:

> funding of Storj's operations and other working capital needs to the extent made in accordance with the Budget, provided however all disbursements for operations and other working capital needs shall be made by the DIP Lender directly to the applicable third-party vendor or Storj as applicable on a monthly basis after Storj has provided the DIP Lender within twenty-one (21) days of each advance (1) a written request by Storj for the payment to be made, (2) a copy of the invoice to be paid, (3) wiring information for the payee, (4) an updated Approved Budget with actual performance and projected performance, and (5) any other documentation reasonably requested by the DIP Lender to process the payment. For the avoidance of doubt, Interest shall be charged on all amounts held in the Segregated Funding Account prior to disbursement by the DIP Lender.

(c) Storj hereby promises to pay to the order of DIP Lender the principal amount of the DIP Loan on the Maturity Date, plus all accrued interest, fees, and other Obligations then outstanding in full in cash. DIP Lender agrees that the Interest Rate shall be 18% and the maturity term shall be 12 months after entry of the DIP Financing Order.

(d) Storj shall have the right to make prepayments of principal in whole or in part.

(e) Payments made hereunder shall be credited as follows: first, to interest accrued but unpaid on the DIP Loan until paid in full; second, to the principal balance of the DIP Loan until the same has been paid in full; and finally, to all other Obligations.

Proceeds from Storj selling any assts shall be credited as follows: 67% applied to Storj's operations, and 33% paid to DIP Lender towards the DIP Financing obligation.

**3. Interest and Fees.**

**(a)** Interest shall accrue on the outstanding principal amount of the Obligations calculated on the basis of a year of 360 days for the actual number of days elapsed. Storj promises to pay accrued interest on all outstanding principal amount of the Obligations at the Interest Rate of 18%.

**4. Certain Bankruptcy Matters.**

(a) Subject only to the Carve-Out as provided for the DIP Financing Order and applicable bankruptcy law, Storj hereby agrees that the Obligations shall (i) constitute Superpriority DIP Claims over all administrative expense claims and unsecured claims against Storj now existing or hereafter arising, of any kind or nature whatsoever, including all administrative expense claims of the kind specified in Section 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, 1114 or any other provisions of the Bankruptcy Code and all super-priority administrative expense claims granted to any other Person, the establishment of which super-priority shall have been approved and authorized by the Bankruptcy Court; and (ii) not be subject to any claims against the DIP Collateral pursuant to Section 506(c) of the Bankruptcy Code.

(b) In the event of a conflict between, or inconsistency among, the DIP Financing Order, on the one hand, and any other DIP Loan Document, on the other hand, the DIP Financing Order shall control.

(c) Except as otherwise agreed to by DIP Lender, the DIP Liens, lien priorities, Superpriority DIP Claims, and other rights and remedies granted to DIP Lender pursuant to this Agreement, the DIP Financing Order, or the other DIP Loan Documents (specifically including the existence, perfection, enforceability and priority of the Liens provided for herein and therein, and the Superpriority DIP Claims provided herein and therein) shall not be modified, altered, or impaired in any manner by any other financing or extension of credit or incurrence of debt by Storj (pursuant to Section 364 of the Bankruptcy Code or otherwise), or by dismissal or conversion of any of the Chapter 11 Case, or by any other act or omission whatsoever.

(d) Without limiting the generality of the foregoing, notwithstanding any such financing, extension, incurrence, dismissal, conversion, act or omission:

(i) subject only to the Carve-Out, (A) no costs or expenses of administration which have been or may be incurred in the Chapter 11 Case or any conversion of the same or in any other proceedings related thereto and (B) no priority claims, are or will be prior to or on a parity with any claim of DIP Lender against Storj in respect of any Obligations; and

(ii) other than as provided in the DIP Financing Order or the other DIP Loan Documents, DIP Liens on the DIP Collateral shall constitute valid, enforceable and perfected Liens, and shall be prior to all other Liens against the DIP Collateral, now existing or hereafter arising, in favor of any other creditor or other Person.

(e) In connection with any sale of all or any portion of the DIP Collateral, including pursuant to Section 9-610 or 9-620 of the UCC, at any sale thereof conducted under the provisions of the

Bankruptcy Code, including Section 363 of the Bankruptcy Code or as part of a plan of reorganization or liquidation subject to confirmation under Section 1129(b)(2)(A)(iii) of the Bankruptcy Code, or at any sale or foreclosure conducted by DIP Lender, in accordance with applicable Law, DIP Lender may "credit bid" up to the full amount of all Obligations in order to purchase (either directly or through one or more acquisition vehicles) all or any portion of the DIP Collateral. In connection with the foregoing, DIP Lender shall have the right to assign its right to purchase all or any portion of Storj' assets in connection with any such "credit bid" to a newly-formed acquisition vehicle that is an affiliate of DIP Lender; provided, however, that any such assignee of DIP Lender shall not have any shareholder, member, officer, director, or any Insider (as defined in Section 101(31) of the Bankruptcy Code ) of any of the foregoing in common with any of the management, officer or director of Storj or any Insider of any of the foregoing.

**5. Grant of Security**.

(a) To secure the Obligations, effective immediately upon entry of the DIP Financing Order, pursuant to Sections 362, 364(c)(2) and 364(c)(3) of the Bankruptcy Code, DIP Lender is hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected first position post-petition security interests in and Liens on all DIP Collateral. In furtherance of the foregoing, Storj hereby unconditionally grants, assigns, and pledges to DIP Lender, to secure the Obligations, a continuing lien on and security interest in and to the DIP Collateral.

(b) To the extent permitted by applicable Law, Storj hereby irrevocably authorizes DIP Lender and its affiliates, counsel, and other representatives, at any time and from time to time, to file in the name of Storj or otherwise and without separate authorization or authentication of Storj appearing thereon, such UCC financing statements or continuation statements as DIP Lender may reasonably deem necessary or reasonably appropriate to further perfect or maintain the perfection of the Lien of DIP Lender under this Agreement, and such financing statements and amendments may describe the DIP Collateral or such lesser part thereof as DIP Lender determines in its sole discretion. Storj hereby also authorizes DIP Lender and its affiliates, counsel and other representatives, at any time and from time to time, to execute and file any and all agreements, instruments, documents and papers as DIP Lender may reasonably request to evidence the DIP Liens. Storj agrees that, except to the extent that any filing office requires otherwise, a carbon, photographic, photostatic, or other reproduction of this Agreement or of a financing statement is sufficient as a financing statement. Storj shall pay the costs of, or incidental to, any recording or filing of any financing or continuation statements or other assignment documents concerning the DIP Collateral.

(c) Storj will promptly deliver each instrument and any other document, and take any other action, which may be reasonably requested by DIP Lender in order to perfect the DIP Liens, all at the reasonable cost and expense of Storj.

**6. Governing Law, Jurisdiction, Etc**.

(a) This Agreement shall be construed, performed, and enforced in accordance with, and governed by, the laws of the State of West Virginia, except to the extent that the laws of such State are superseded by the Bankruptcy Code or other applicable federal law.

(b) Storj irrevocably and unconditionally agrees that it will not commence any action, litigation or proceeding of any kind or description, whether in law or equity, whether in contract or in tort or otherwise, against DIP Lender, or any Related Party of the foregoing in any way relating to this Agreement or any other DIP Loan Document (other than the DIP Financing Order) or the transactions relating hereto or thereto, in any forum other than the Bankruptcy Court or, if the Bankruptcy Court does not have (or abstains from) jurisdiction, the courts of the State of West Virginia sitting in Ohio County and of the United States District Court of the Northern District of West Virginia, and any appellate court from any thereof, and each of the parties hereto irrevocably and unconditionally submits to the jurisdiction of such courts and agrees that all claims in respect of any such action, litigation or proceeding may be heard and determined in the Bankruptcy Court or such West Virginia state court or, to the fullest extent permitted by applicable law, in

such federal court. Each of the parties hereto agrees that a final judgment in any such action, litigation or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law. Nothing in this Agreement or in any other DIP Loan Document shall affect any right that DIP Lender may otherwise have to bring any action or proceeding relating to this Agreement or any other DIP Loan Document against Storj or its properties in the courts of any jurisdiction.

(c) Storj irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Agreement or any other DIP Loan Document (other than the DIP Financing Order) in any court referred to in Section 6(b). Storj irrevocably and unconditionally waive, to the fullest extent permitted by applicable Law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

**7. Waiver of Jury Trial**. EACH PARTY HERETO IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF THIS AGREEMENT OR ANY OTHER DIP LOAN DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT, OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER DIP LOAN DOCUMENTS BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 7.

**8. Miscellaneous**.

(a) The provisions of this Agreement are intended to be severable. If for any reason any provisions of this Agreement shall be held invalid or unenforceable in whole or in part in any jurisdiction, such provision shall, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without in any manner affecting the validity or enforceability thereof in any other jurisdiction or the remaining provisions thereof in any jurisdiction.

(b) No amendment, modification, supplement, or waiver of any provision of this Agreement nor consent to departure by Storj therefrom shall be effective unless the same shall be in writing and signed by Storj and DIP Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

(c) No failure on the part of DIP Lender to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof or preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by Law. The failure by DIP Lender at any time or times to require strict performance by Storj of any provision of this Agreement or any of the other DIP Loan Documents shall not waive, affect or otherwise diminish any right of DIP Lender thereafter to demand strict compliance and performance with such provision.

(d) The Obligations, representations and warranties of Storj hereunder shall be joint and several. This Agreement shall be binding on Storj and its successors and assigns and shall inure to the benefit of DIP Lender and its successors and assigns, except that Storj may not assign, transfer or delegate this Agreement, any other DIP Loan Document or any of its Obligations hereunder or thereunder without the prior written consent of DIP Lender in its sole discretion. With the consent of Storj, not to be unreasonably withheld, DIP Lender may assign all or a portion of its rights and obligations under this Agreement; provided that such consent shall not be required (*-) at any time that an Event of Default has

occurred and is continuing, (ii) in connection with any assignment to an affiliate of DIP Lender, or (iii) in connection with any merger or consolidation of DIP Lender. Notwithstanding the foregoing, the DIP Lender shall be prohibited from assigning all or a portion of its rights and obligations under this Agreement to a list of assignees proposed by the Storj in writing to the DIP Lender at least five (5) days prior to closing, and the list of the prohibited assignees is approved by the DIP Lender in writing prior to closing.

(e) Unless otherwise agreed in writing, notices shall be given to DIP Lender and Storj at their address set forth in the signature page of this Agreement, or such other address communicated in writing by such party to the other, which notices shall be deemed to be effective upon receipt.

(f) All representations and warranties made in this Agreement and the other DIP Loan Documents shall survive the making of any extension of credit hereunder and the delivery of any Note and shall continue in full force and effect until the full and final payment and performance of the Obligations and the termination of the DIP Loan Documents.

9. **Consent and Validation of Electronic Signatures.**

(a) Each party affirms their express consent to conduct this transaction by electronic means. Each party agrees that they will not contest the validity or enforceability of this DIP Credit Agreement solely because it was executed via an electronic signature platform.

(b) The parties agree that this DIP Credit Agreement, any amendments, and any related documents or notices may be executed, transmitted, and stored electronically.

(c) Electronic signatures, digitally scanned copies of ink signatures, and electronic records shall have the same legal force, validity, and enforceability as manually executed paper originals under the West Virginia Uniform Electronic Transactions Act, W. Va. Code §§ 39A-1-1 et seq.

[Remainder of page intentionally left blank.]

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto as of the date first written above.

**STORJ LABS INC.**

By: ____________________________________
Name: Dr. Sayed Shuja Ali
Title: Vice President and Chief Restructuring Officer

**INVENIAM CAPITAL PARTNERS, INC.**

By: ____________________________________
Name: Robert Yablunsky
Title: Executive Vice President