**IN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| In re: | ) | Case No. 5:26-bk-00512 |
| | ) | |
| STORJ LABS, INC., | ) | Chapter 11 |
| | ) | |
| | ) | |
| Debtor. | ) | Judge David L. Bissett |

**MOTION OF COLLATERAL AGENTS TO DISMISS DEBTOR'S CHAPTER 11 CASE PURSUANT TO 11 U.S.C. 1112(B)(1) OR, IN THE ALTERNATIVE, CHANGE VENUE**

Michael Ward and Robert Lamb (together, the "**Collateral Agents**"), in their capacity as Collateral Agents for certain entities with liens on shares of the Debtor (the "**Pledgees**"), file this *Motion of Collateral Agents to Dismiss Debtor's Chapter 11 Case Pursuant to 11 U.S.C. § 1112(b)(1) or, in the Alternative, Change Venue* (the "**Motion**").

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and may be determined by the Bankruptcy Court.

3. For the sole purpose of a hearing on this Motion, venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory authority for the relief requested is 11 U.S.C. §§ 105(a) and 1112(b), 28 U.S.C. §§ 1406(a) and 1412, and Rules 1014, 1017(f)(1) and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

# BACKGROUND

## I. Relationship Between Pledgees and Debtor

5. On December 17, 2024, the Pledgees[1] entered into a Stock Purchase Agreement (the "**SPA**") with Inveniam Capital Partners, Inc., ("**Inveniam**"), the ultimate parent company and proposed DIP Lender of the Debtor, Storj Labs, Inc. (the "**Debtor**"), whereby the Pledgees agreed to sell their shares of Hedgehog Invest Limited (the "**Shares**") to Inveniam.

6. In partial consideration for the Pledgees' sale of the Shares to Inveniam, on December 17, 2024, Inveniam executed a promissory note (the "**Note**") in favor of the Pledgees in the aggregate principal amount of $9,609,265.57.

7. Following certain defaults by Inveniam under the Note, on May 12, 2026, Inveniam and the Collateral Agents, on behalf of the Pledgees, executed a Forbearance Agreement (the "**Forbearance Agreement**"), whereunder the Pledgees agreed to forbear from exercising their rights and remedies under the Note and SPA so long as certain conditions and obligations were satisfied by Iveniam.

8. In consideration for the Pledgees' willingness to forbear and to be bound by the Forbearance Agreement, on May 11, 2026, Inveniam executed a Security Agreement (the "Se**curity Agreement**") in favor of the Collateral Agents, for themselves and on behalf of the Pledgees, pursuant to which Inveniam granted the Collateral Agents, on behalf of the Pledgees, a security interest in, inter alia, all equity interests in the Debtor and in all assets of the Debtor.

9. Specifically, Inveniam (i) pledged to Collateral Agents and granted the Collateral Agents "a senior security interest in all right, title and interests of [Inveniam] and its subsidiaries

[1] The Pledgees referred to herein include the Collateral Agents, as well as the Adam and Stephanie Howarth Revocable Trust, Bharath Srinivaas Rajagopolan, Four Peaks LLC, Khalid Mohamed Murgian, Leila Govi, Pembroke US Investments LLC, Randolph Investments Ltd, Seedrs Nominees Limited of Stylus Building, Boutique Capital Pty Ltd ATF Tectonic Digital Asset Opportunities Fund, and Watermill Ltd.

in and to all equity interests in, and all assets of, the [Debtor] and its subsidiaries", (ii) represented to the Pledgees and the Collateral Agents that Inveniam "is the direct or indirect owner" of all of the Debtor's assets, (iii) covenanted "not to create, incur, assume, or permit to exist any lien or encumbrance" on any of the assets of the Debtor; and (iv) acknowledged that "[Inveniam] has no claims, defenses, setoffs, or counterclaims against the [Pledgees and Collateral Agents], and all obligations of [Inveniam] under the Note and the other Loan Documents are valid, binding, and enforceable in accordance with their terms".

10. On May 27, 2026, the Collateral Agents perfected their security interest in Inveniam's interests in the Debtor by filing a UCC financing statement with the Delaware Department of State at U.C.C. Initial Filing No. 2026 4193773, which identifies Inveniam as the debtor and the Collateral Agents as the secured parties .

11. Inveniam has defaulted under the Forbearance Agreement by failing to make payments when due under the Forbearance Agreement.

## II. Debtor's Bankruptcy Case

12. On July 26, 2026, the Debtor commenced the above-captioned chapter 11 bankruptcy case in the Bankruptcy Court for the Northern District of West Virginia (the "**Bankruptcy Case**").

13. In the Debtor's Voluntary Petition for Non-Individuals Filing for Bankruptcy [ECF No. 1] (the "**Petition**"), the Debtor identifies its principal place of business as 1201 W Peachtree St. NW Ste 2625, Atlanta, GA 30309-2955.

14. The Debtor is incorporated in the State of Delaware.

15. In section 11 of the Petition, where Official Form 201 leaves space for the Debtor to answer, "Why is the case filed in this district?", neither boxes for the available answers—

"Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district" and "A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district"—are completed.

16. The Petition contains a Corporate Ownership Statement (the "**Ownership Statement**") stating that Inveniam directly or indirectly owns 10% or more any class of the Debtor's equity interests.

17. The Petition was signed by Dr. Sayed Shuja Ali (**"Dr. Ali"**) and contains no resolution showing that Dr. Ali was authorized to commence the Bankruptcy Case on behalf of the Debtor.

18. No pleading in this proceeding explains the Debtor's connection to the Northern District of West Virginia or Dr. Ali's connection to the Debtor.

19. On August 2, 2026, the Debtor filed the DIP Motion, requesting that the Court (i) authorize it to enter a Debtor-in-Possession Credit Agreement attached thereto as Exhibit B (the "**DIP Agreement**") and use cash collateral pursuant to 11 U.S.C. § 363(c)(2), (ii) deem Inveniam a good faith lender under 11 U.S.C. § 364(e) and grant it the protections provided thereunder, and (iii) modify the automatic stay to permit Inveniam to exercise remedies set forth in the DIP Agreement upon an event of default.

20. In the DIP Motion, the Debtor states that "the terms and conditions of the DIP Credit Agreement . . . were negotiated with the DIP Lender at arm's length[]", despite the fact that the Ownership Statement states that Inveniam directly or indirectly owns 10% or more any class of the Debtor's equity interests. See DIP Motion, p. 13.

21. On August 5, 2026, upon the request of the Debtor, the Court entered an order extending the time by which the Debtor must file the schedules and statement of financial affairs required under Fed. R. Bankr. P. 1007 (the "**Schedules**") to August 24, 2026. [ECF No. 23.]

22. On August 5, 2026, the Court entered an order (the "**Interim DIP Order**") authorizing the Debtor's use of cash collateral on an interim basis, setting a deadline to object to the entry of a final order regarding the relief requested in the DIP Motion for August 21, 2026, at 4:00 p.m., and setting a final hearing on the DIP Motion (the "**Final Hearing**") for August 25, 2026, at 1:30 p.m. [ECF No. 25].

23. On August 6, 2026, the court issued a Notice of Chapter 11 Bankruptcy Case, setting the meeting of creditors required under 11 U.S.C. § 341 (the "Meeting of Creditors") for August 31, 2026, at 1:00 p.m. [ECF No. 28.]

**<u>RELIEF REQUESTED</u>**

24. Section 1112(b)(1) of the Bankruptcy Code provides for the dismissal of a chapter 11 bankruptcy case for cause:

> [o]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss the case under this chapter, whichever is in the best interests of the estate and creditors, for cause . . . .

11 U.S.C. § 1112(b)(1).

25. "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

26. "If a petition is filed in an improper district, the court may dismiss the case or may transfer it to another district [in the interest of justice or for the convenience of the parties, on its

own or on a party in interest's timely motion, and only after a hearing on notice to the petitioner, United States trustee, and other entities as the court orders]." Fed. R. Bankr. P. 1014.

## ARGUMENT

### I. The Bankruptcy Case should be dismissed pursuant to Section 1112(b)(1) of the Bankruptcy Code "for cause".

#### A. Bad faith constitutes "cause" for dismissal under Fourth Circuit law.

27. Though "cause" for purposes of section 1112(b)(1) is not defined in the Bankruptcy Code, the legislative history indicates that "the facts of each request will determine whether relief is appropriate under the circumstances." H.R. Rep. No. 95-595, at 344 (1977), reprinted in 1978 U.S.C.C.A.N. 6963, 6299-300.

28. However, because only an "honest but unfortunate debtor" is eligible for the protections offered under the Bankruptcy Code, the right to commence a bankruptcy petition is predicated on the good faith of the debtor. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 374 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991)).

29. The United States Supreme Court's decision in *Marrama* has been applied by the United States Court of Appeals for the Fourth Circuit, which has regularly held that "[t]he right to file a Chapter 11 bankruptcy petition is conditioned upon the debtor's good faith -- the absence of which is cause for summary dismissal." *In re Premier Auto. Servs., Inc.*, 492 F.3d 274, 279 (4th Cir. 2007) (concluding that "the ability of the Bankruptcy Court to conduct a threshold inquiry into the good faith of a petitioner is indispensable to proper accomplishment of the basic purpose of chapter 11 protection.") (internal quotation omitted); *see also Carolin Corp. v. Miller*, 886 F.2d 693, 697-98 (4th Cir. 1989) (explaining that a good faith requirement "protects the jurisdictional integrity of the bankruptcy courts by rendering their equitable weapons . . . available only to those debtors and creditors with clean hands" and "prevents abuse of the bankruptcy process by debtors

whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes.”).

30. Determining whether a bankruptcy case was filed in good faith requires consideration as to whether there is a “going concern to preserve” which can be demonstrated by showing that there exists a “realistic possibility of an effective reorganization.” *Carolin Corp.*, 886 F.2d at 1072 (noting that if there is no viable business to rehabilitate and preserve, there is no reason for pursuing chapter 11) (citations omitted).

31. Accordingly, a “good faith standard furthers the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy.” *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986).

32. Therefore, dismissal of a bankruptcy case for cause where the debtor lacked good faith in filing the case protects the integrity of the bankruptcy process and honors the equitable tenets supporting the Bankruptcy Code.

**B. The Fourth Circuit’s Two-Prong Test to Establish Bad Faith.**

33. The two-prong test established by Fourth Circuit case law allows the dismissal of a chapter 11 case for cause where there is “subjective bad faith on the part of the debtor, in that the motive for filing the Chapter 11 petition was to abuse the reorganization process, coupled with an objective element that reorganization is in fact unrealistic.” *In re Superior Siding & Window, Inc. v. Associated Materials, Inc.*, 14 F.3d 240, 242 (4th Cir. 1994) (citing *Carolin Corp.*, 886 F.2d at 700-02)).

34. The purpose of the subjective prong of the test is to ensure that the debtor “actually intends ‘to use the provisions of Chapter 11 . . . to reorganize or rehabilitate an existing enterprise,

or to preserve going concern values of a viable or existing business.'" *Carolin Corp.*, 886 F.2d at 702 (citing *In re Victory Constr. Co.*, 9 B.R. 549, 564 (Bankr. C.D. Cal. 1981)).

35. The purpose of the objective prong of the test is to ensure that the petition encapsulates some relationship to the Bankruptcy Code's "statutory objective of resuscitating a financially troubled [debtor]." *Carolin Corp.*, 886 F.3d at 701 (internal citations omitted).

36. Though both the subjective and objective inquiries of the two-prong test must be satisfied to warrant dismissal, the Fourth Circuit has not articulated any specific "indicia" or "recurring patterns of conduct" that must be demonstrated to satisfy those tests. *Id* at 700-701.

**a. The facts support a finding of Debtor's subjective bad faith.**

37. To satisfy the subjective bad faith prong of the test, the inquiry is whether the Debtor actually intends "to use the provisions of Chapter 11 . . . to reorganize or rehabilitate an existing enterprise, or to preserve going concern values of a viable or existing business." *Carolin Corp.*, 886 F.2d at 702 (citations omitted).

38. Stated differently, the subjective prong can also be phrased as whether the Debtor's true motivation in commencing the chapter 11 case is "to abuse the reorganization process" and "cause hardship or to delay creditors, . . . without an intent or ability to reorganize. . ." *Id.*

39. Here, it is the total deficiency of information provided by the Debtor and its Chief Restructuring Officer, Dr. Ali, that provide evidence of the Debtor's intent in filing this Bankruptcy Case—or, perhaps, lack of true intent or ability to reorganize or preserve any viable business.

40. Little to no information is provided about the Debtor on the record.

41. The Declarations of Dr. Ali in support of the DIP Motion [ECF No. 14-1] and the Debtor's Application to Retain and Employ Spilman Thomas & Battle, PLLC as Counsel for Nunc Pro Tunc [sic] to the Petition Date [ECF No. 11-1] (i) are identical, (ii) were not presented to the

Court under penalty of perjury, and (iii) reveal no meaningful substance about the Debtor's operations, principals, revenue, the specific events leading to bankruptcy, or the appointment of the declarant as the Chief Restructuring Officer of the debtor in possession.

42. As will be explained in more detail below, the Debtor has provided nothing to demonstrate any connection to the State of West Virginia or, more specifically, the Northern District of West Virginia, that would make venue appropriate in this Court.

43. The lone monthly operating report filed by the Debtor to date sheds little to no light on the Debtor's operations, its ties to West Virginia, or its reorganization viability.

44. The Debtor also betrayed its lack of good faith by stating in the DIP Motion that "the terms and conditions of the DIP Credit Agreement . . . were negotiated with the DIP Lender at arm's length[]", despite the fact that the Ownership Statement states that Inveniam directly or indirectly owns 10% or more any class of the Debtor's equity interests. *See* DIP Motion, p. 13.

45. Further, Inveniam, the Debtor's ultimate parent and proposed DIP Lender, is in default of its own monetary obligations to the Pledgees, not only under the Note, but under the Forbearance Agreement executed following Inveniam's initial defaults under the Note.

46. Movants submit that the complete dearth of information provided by the Debtor to date and the Debtor's parent and proposed DIP Lender's existing defaults to the Pledgees support a finding that the Debtor does not truly intend to use this Chapter 11 Case to reorganize and is merely seeking a means to hinder and delay its creditors, thereby satisfying the subjective prong of the bad-faith test.

**b. Based upon the information provided, any reorganization attempt of the Debtor will be futile, satisfying the objective prong of the bad faith test.**

47. The second prong of the bad faith test, which is objective, focuses on a determination of whether "there is no going concern to preserve . . . and . . . no hope of rehabilitation, except according to the debtor's terminal euphoria." *Carolin*, 886 F.2d at 701-02 (internal citations omitted).

48. The focus of this prong looks at whether the chance of an effective reorganization is realistic. *Premier Auto.*, 492 F.3d at 280 (citing *Carolin Corp.*, 886 F.2d at 698).

49. If there is no realistic possibility of an effective reorganization, the bankruptcy case is deemed to be objectively futile. *Carolin Corp.*, 886 F.2d at 703.

50. Here, once again, the lack of information and lack of candor by the Debtor gives rise to the strong suggestion that any true reorganization attempt of the Debtor is futile.

51. Moreover, as detailed above, the fact that the Debtor's parent and proposed DIP Lender faces its own creditor enforcement risks further suggests that any true reorganization attempt of the Debtor is futile.

**C. Cause exists to dismiss the Bankruptcy Case for bad faith.**

52. Movants submit that the purposes of the Bankruptcy Code would not be furthered in this case, as the Debtor possesses neither the intent nor the ability to reorganize. Both the subjective and objective prongs of the bad faith test are met, and cause exists to dismiss this Bankruptcy Case.[2]

---

[2] Upon finding cause to dismiss or convert the Debtor's chapter 11 case, the Court must determine whether dismissal or conversion to a chapter 7 proceeding with the appointment of a trustee is in the best interests of the creditors and estate. *In re Kingsway Capital Partners, LLC v. Sosa*, 549 B.R. 897, 906 (N.D. Ca. 2016). Given the non-disclosure of relevant information about the Debtor, its principals, its corporate structure, its debt structure, and most importantly, its relationship to this jurisdiction, this case is more suited to a dismissal and Movants only seek dismissal of the case through this Motion.

**II. The Bankruptcy Case should be dismissed or, alternatively, transferred to the Northern District of Georgia pursuant to 28 U.S.C. § 1406(a) and Fed. R. Bankr. P. 1014 for improper venue.**

53. "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

54. "If a petition is filed in an improper district, the court may dismiss the case or may transfer it to another district [in the interest of justice or for the convenience of the parties, on its own or on a party in interest's timely motion, and only after a hearing on notice to the petitioner, United States trustee, and other entities as the court orders]." Fed. R. Bankr. P. 1014.

55. Venue for a bankruptcy case is proper in the district (i) where the debtor is domiciled or resides, (ii) where the debtor's principal place of business is located, (iii) where the debtor's principal assets are located, or (iv) where there is a pending bankruptcy case concerning the debtor's affiliate, general partner, or partnership. 28 U.S.C. § 1408.

56. "[I]f a venue is improper, the bankruptcy court must either dismiss the action or transfer the same, if transfer is in the interest of justice or for the convenience of the parties." *In re Taflan*, 312 B.R. 588, 590-91 (N.D.W. Va. 2004); *see also In re Perkins*, 2013 Bankr. LEXIS 1911 at *4-5 (Bankr. W.D.N.C. 2013) ("The majority view is that an improperly venued case cannot be retained if a party in interest files a motion requesting a change in venue . . . If venue is improper, and if a timely objection is lodged by a party in interest, the bankruptcy case must be dismissed or transferred to a proper judicial district."); *In re Allen*, 2022 Bankr. LEXIS 922, at *4 (Bankr. M.D.N.C. 2022) (holding that the remedy for improper venue under 28 U.S.C. § 1408 "is governed by § 1406(a)").

57. In section 11 of the Petition, where Official Form 201 leaves space for the Debtor to answer, "Why is the case filed in this district?", neither boxes for the available answers—"Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district" and "A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district"—are completed.

58. The Debtor is incorporated in the State of Delaware.

59. In the Debtor's Petition, the Debtor identifies its principal place of business as 1201 W Peachtree St. NW Ste 2625, Atlanta, GA 30309-2955.

60. None of the Debtor's assets are located in the Northern District of West Virginia.

61. There are no pending cases in the Northern District of West Virginia concerning an affiliate, general partner, or partnership of the Debtor.

62. None of the bases for venue under 28 U.S.C. § 1408 apply to this Bankruptcy Case. Accordingly, the Bankruptcy Case should be dismissed or transferred to a proper venue.

63. "Transfer may only occur if the Court finds it is in the interest of justice . . . a determination committed to the Court's sound discretion. . . . This interest of justice analysis is similar to that under § 1412 and considers factors such as whether: (i) transfer would promote the economic and efficient administration of the bankruptcy estate; (ii) the interests of judicial economy would be served by the transfer; (iii) the parties would be able to receive a fair trial in each of the possible venues; (iv) either forum has an interest in having the controversy decided within its borders; (v) the enforceability of any judgment would be affected by the transfer; and (vi) the plaintiff's original choice of forum should be disturbed. . . . Because this inquiry is a 'broad and flexible standard,' the Court may also consider other factors. . . . ***<u>One such factor is whether</u>***

***the Debtor filed her petition in bad faith***, which would weigh against transfer. But . . . a finding of bad faith is not required to dismiss a case." *In re Allen*, 2022 Bankr. LEXIS 922, at *5-6 (Bankr. M.D.N.C. 2022) (internal citations omitted) (emphasis added).

64. Because cause exists to dismiss the Bankruptcy Case for bad faith, the Bankruptcy Case should be dismissed, rather than transferred. Accordingly, the Collateral Agents respectfully request that the Court dismiss the Debtor's Bankruptcy Case pursuant to 28 U.S.C. § 1406(a).

65. However, should the Court determine that it is in the interest of justice to transfer rather than dismiss the Bankruptcy Case, the Bankruptcy Case should be transferred to the Northern District of Georgia.

66. The Debtor has its principal place of business in the Northern District of Georgia.

67. As such, (i) transferring the matter to the Northern District of Georgia would promote the economic and efficient administration of the Debtor's bankruptcy estate, (ii) the Collateral Agents, the Debtor, and Inveniam would be better able to resolve their disputes in the Northern District of Georgia, and (iii) the Northern District of Georgia has an interest in the Debtor's Bankruptcy Case and the Collateral Agents' disputes with the Debtor and Inveniam.

68. Accordingly, the Collateral Agents respectfully request, in the alternative, that the Court transfer the Bankruptcy Case to the Northern District of Georgia.

69. The Collateral Agents do not intend this Motion, nor any subsequent pleading, claim or suit, to waive any rights to which they may be entitled including, but not limited to: (i) their right to have final orders in non-core matters entered only after de novo review by a District Judge; (ii) their right to trial by jury in any proceeding related to these cases, or any right to arbitration; (iii) their right to move for abstention; (iv) their right to have the district court withdraw the reference in any matter subsequent to mandatory or discretionary withdrawal; or (iv) any rights,

claims actions, defenses, setoffs, or recoupments to which they may be entitled under agreements, in law or in equity, all of which rights, claims, actions, defenses, setoffs, and recoupments it expressly reserves. This Motion does not constitute an agreement to accept service of initial process under Fed. R. Bankr. P. 7004 or Fed. R. Civ. P. 4.

WHEREFORE, Michael Ward and Robert Lamb, in their capacity as Collateral Agents for the Pledgees, respectfully request that the Court dismiss the Bankruptcy Case pursuant to 11 U.S.C. § 1112(b)(1) and 28 U.S.C. § 1406(a) or, in the alternative, transfer the Bankruptcy Case to the Northern District of Georgia pursuant to 28 U.S.C. § 1406(a) and Fed. R. Bankr. P. 1014.

Respectfully submitted,

Dated: August 24, 2026

TUCKER ARENSBERG, P.C.

*/s/ Lauren Hutchins McCartney*
Lauren Hutchins McCartney, Esq. (WV ID 12304)
Judith K. Fitzgerald, Esq. (PA ID No. 18110)
*Motion for pro hac vice forthcoming*
Beverly Weiss Manne, Esq. (PA ID No. 34545)
*Motion for pro hac vice forthcoming*
Maribeth Thomas, Esq. (PA ID No. 208376)
*Motion for pro hac vice forthcoming*
George A. R. Balchunas, Esq. (PA ID No. 338421)
*Motion for pro hac vice forthcoming*
1500 One PPG Place
Pittsburgh, PA 15222
(412) 566-1212
lmccartney@tuckerlaw.com
jfitzgerald@tuckerlaw.com
bmanne@tuckerlaw.com
mthomas@tuckerlaw.com
gbalchunas@tuckerlaw.com

*Counsel for Michael Ward and Robert Lamb, in their capacity as Collateral Agents for the Pledgees*