# MASTER SERVICES AGREEMENT
# FOR CONSULTING SERVICES

This Master Services Agreement III for Consulting Services (the "**Agreement**") is entered into by and between Heather Trowbridge, (email: heathertrowbridge1@gmail.com, address: 18844 Hampstead Heath Ct, Land O Lakes, FL 34638) ("**Consultant**") and Storj Labs Inc. (1870 The Exchange SE Ste 220 PMB 75268 Atlanta, GA 30339-2171) ("**Storj**" or "**Company**"). Consultant and Storj are sometimes referred to herein individually as a "**Party**" and collectively as the "**Parties**."

This Agreement is effective as of June 3, 2026 (the "**Effective Date**"). The Agreement shall continue through December 31, 2026 unless earlier terminated as set forth below (the "**Term**"). The term of a Statement of Work ("**SOW**") hereunder, if different from the Term, will be as expressly stated therein.

The Parties hereby agree as follows:

## 1. Definitions.

"**Affiliate**" means an entity which, directly or indirectly, controls, is controlled by or is under common control with Storj. As used herein, "control" means the beneficial ownership of more than fifty percent (50%) of the voting equity securities or other equivalent voting interests of the entity.

"**Storj Materials**" means all information, technology, data, documents, and materials that Consultant receives from Storj and/or any Storj Affiliates or acquires or learns from their respective files, facilities, documents, employees, or representatives, including any and all third party information, data, documents, or materials.

"**Confidential Information**" means any and all: information designated by Storj as confidential or proprietary; the Storj Materials; information or data concerning or related to Storj's products (including the discovery, invention, research, improvement, development, manufacture, or sale thereof), processes, or business operations (including financial information, sales, costs, profits, pricing methods, identity of suppliers, organization, and employee and customer lists) and including any information from Storj related to or provided by Storj's customers, clients, or other Third Parties; any other information of Storj which is of such a nature that a reasonable person would believe it to be confidential or proprietary; and the Deliverables, Work Product, and any specifications, mask works, designs, research plans, formulas, methods, know-how, techniques, processes, designs, code, inventions, computer programs and technology provided by Storj; and the terms (including pricing terms) of this Agreement.

"**Data Privacy Laws**" means all applicable laws, regulations, and other legal or self-regulatory requirements in any jurisdiction relating to privacy, data protection, data security, breach notification, or the Processing of Personal Data, including without limitation, to the extent applicable, the California Consumer Privacy Act, Cal. Civ. Code § 1798.100 et seq. and the General Data Protection Regulation, Regulation (EU) 2016/679. For the avoidance of doubt, if Consultant's Services involving Personal Data are not within the scope of a given Data Protection Law, such law is not applicable for purposes of this Agreement.

"**Deliverables**" means any software, code, reports, documentation, content, or other materials of any type Content (in any medium and in any stage of development or completion) provided by Consultant to Storj or created by Consultant (including any of its employees, agents or subcontractors), alone or jointly with others, in connection with performing the Services.

**EXHIBIT B**

"**Intellectual Property Rights**" means all intellectual property rights including all copyright rights, copyright registrations and applications, trademark rights (including trade dress and trade name), trademark registrations and applications, domain names, patent rights (including the right to apply therefor), patent applications (including the right to claim priority under applicable international conventions), and all patents issuing thereon, and inventions, whether or not patentable, trade secret rights, mask-work rights, all utility and design rights, rights in specifications, authors rights, moral rights, rights of privacy and publicity, rights in algorithms, rights in packaging, rights in goodwill, and other intellectual property rights, as may exist now and hereafter come into existence, and any and all applications, continuations, registrations, renewals, and extensions thereof, regardless of whether any of such rights arise under the laws of the United States or of any other state, country or jurisdiction.

"**Person**" means an individual, corporation, partnership, joint venture, association, trust, unincorporated organization, governmental entity or other entity.

"**Personal Data**" means any information relating to an identified or identifiable individual or that is considered "personal data," "personal information," "personally identifiable information," or the like by Data Privacy Laws, that is processed in relation to the Agreement.

"**Pre-Existing Intellectual Property**" means any information, technology, or materials authored, developed, or otherwise reduced to practice by a Party hereto (acting alone and not in collaboration with the other Party) before the Effective Date, independently from the Services, and without use of any of the other Party's Confidential Information.

"**Representative**" means the directors, officers, employees, subcontractors, agents, and advisors of the specified Party or of its respective Affiliates.

"**Third Party Materials"** means any invention, improvement, development, concept, discovery, or other proprietary information owned or licensed, in whole or in part, by any third party.

**2. Services.** Consultant shall provide professional services ("**Services**") to Storj as described on one or more Statements of Work signed by Consultant and Storj which reference this Agreement ("**SOW**" or "**Statement of Work**"). The SOW is attached hereto as **Exhibit A** and is incorporated herein by reference.

**3. Data Processing.**

3.1. Use Restrictions. Consultant shall only access and use Storj Materials, including Confidential Information and Personal Data, to fulfill its obligations under the Agreement or as explicitly directed by Storj, and for no other purposes.

3.2. Compliance with Data Privacy Laws. Consultant acknowledges that in the course of providing the Services, it may receive or have authorized access to Personal Data as defined herein. Consultant agrees to comply with applicable Data Privacy Laws with respect to such data. Consultant will provide reasonable assistance to and cooperation with Storj in relation to Storj's obligations under Data Privacy Laws.

3.3. Security Breach. Consultant shall notify Storj promptly, and in any event within forty-eight (48) hours, of any accidental or unlawful acquisition, destruction, loss, alteration, unauthorized disclosure of, or access to, Personal Data ("**Security Breach**"). Consultant shall comply with the Security Breach-related obligations directly applicable to it under Data Privacy Laws and will assist Storj in Storj's compliance with its Security Breach-related obligations.

3.4. Deletion of Data. At Storj's direction at any time, and in any event upon termination or expiration of this Agreement, except to the extent required by Data Privacy Laws, Consultant shall, and shall

cause its representatives and subcontractors to, immediately (or consistent with another time frame set forth by Storj) return to Storj or, if so directed by Storj, destroy and certify the destruction of any and all Storj Materials, any other Storj data and all records of such Storj Materials and other data.

**4. Subcontractors**. Consultant may not subcontract any element of the Services or provide a subcontractor with access to Storj Materials without the prior express written consent of Storj. To the extent any subcontractors are authorized by Storj, Consultant shall (i) remain directly responsible to Storj for the acts or omissions of each subcontractor, and (ii) ensure that each subcontractor is bound in writing to terms equally as protective of Storj as the terms and conditions of this Agreement (including, without limitation, those pertaining to confidentiality, and those requirements as may be necessary to secure any rights from any such subcontractor for purposes hereof Section 9.1 (Pre-Existing Intellectual Property; Third Party Materials)).

**5. Service Changes**. Storj reserves the right to modify the scope of the Services to be performed under this Agreement or an SOW by a written notice to Consultant. Storj may request Consultant to perform projects in addition to those described in a current SOW, and any such additional projects shall be specified in an amended or new SOW entered into by Consultant and Storj, which SOW shall specify either the additional fees to be paid by Storj or the basis on which such fees shall be calculated, as applicable.

**6. Access to Deliverables.** Storj shall at any time have the right to take possession of and use any completed or partially completed portions of any Deliverables, notwithstanding that the time for completing any such Deliverables or portions thereof may not have expired. Consultant shall provide Storj at all times with complete and unrestricted access to all Work Product and Deliverables, including but not limited to all source code related thereto and all repositories where they are located including via the methods set forth in the applicable SOW. For clarity, and without limiting the generality of the foregoing, Storj shall at all times have real-time access to the most current code for Work Product and Deliverables at all stages of development and all of the same repositories therefor used or maintained by Consultant.

**7. Acceptance Testing**. As applicable and unless otherwise stated in an applicable SOW, the following acceptance testing terms shall apply. Upon delivery of a Deliverable to Storj, Storj may test the Deliverable to determine if it operates in accordance with and otherwise conforms to the applicable specifications, this Agreement, and the applicable SOW (collectively, the "**Specifications**"). Consultant will provide such assistance as Storj may reasonably require to conduct the acceptance testing. Storj will have thirty (30) business days from the date of delivery ("**Test Period**") to conduct the acceptance testing in which Storj may use its own internal test procedures and any sample input. No Deliverable will be deemed to have been accepted unless Storj notifies Consultant in writing that the Deliverable has successfully passed the acceptance testing ("**Acceptance**"). Acceptance of a Deliverable will not be deemed to constitute a waiver by Storj of any rights under this Agreement or the applicable SOW including, without limitation, based on Consultant's warranties. If Storj determines that a Deliverable does not operate in accordance with or otherwise conform to the applicable Specifications, Storj will provide Consultant with a notice describing such non-conformity (a "**Defect**"). Consultant will, at no additional cost to Storj, correct each Defect within ten (10) business days after its receipt of Storj's notice, by either repairing or replacing the Deliverable. After Consultant has repaired or replaced a Deliverable, Storj will be entitled to repeat the testing process for such Deliverable. If Consultant fails to provide, within the ten-day period, a Deliverable (either repaired or replaced) that conforms to the Specifications, then Storj may elect one of the following alternatives by notifying Consultant thereof: (i) extend the Test Period so that Consultant may remedy the Defects and Storj can retest in accordance with the procedure set forth above; (ii) accept the Services or Deliverable and negotiate for lesser compensation; or (iii) terminate the Statement of Work. If Storj elects to terminate the Statement of Work, Consultant shall promptly refund to Storj all fees, if any, that were paid by Storj under the Statement of Work with respect to the applicable rejected Services and Deliverable. Acceptance under this provision shall not affect any warranty obligation of Consultant under the Agreement. No invoice shall be issued for any Deliverable or Services until they have been accepted by

Storj in accordance with this provision. The remedies set forth in this Section 7 shall be non-exclusive.

**8. Representations and Warranties.** Consultant hereby represents and warrants that:

8.1. Due Authority. Consultant has full right and power to enter into and perform its duties under this Agreement without the consent of any third party, and its performance under this Agreement will not conflict with any other obligation Consultant may have to any other party.

8.2. Standard of Performance. Consultant shall perform the Services in a timely, professional, and workmanlike manner, and with a degree of quality equal to or higher than applicable industry standards for similar services. In addition, all Services and each Deliverable shall conform in all material respects with the Specifications and any other requirements set forth in the applicable SOW.

8.3. Compliance with Laws; Export Restrictions. Consultant shall ensure that the Services (including all Deliverables) and Consultant's performance of its obligations under this Agreement are in compliance at all times with all applicable foreign, federal, state, and local laws, regulations, and orders of any governmental authority of competent jurisdiction and will timely obtain all necessary governmental permits, licenses and clearances. Consultant acknowledges that the Storj Materials may be subject to United States export control and economic sanctions laws, regulations, and requirements and to import laws, regulations, and requirements of certain foreign governments. Consultant shall not, and shall not allow any third party to, export from the United States or allow the re-export or re-transfer of any part of the Storj Materials: (a) to any country subject to export control embargo or economic sanctions implemented by any agency of the U.S. Government; (b) to any person or entity on any of the U.S. government's Lists of Parties of Concern (https://www.bis.doc.gov/index.php/policy-guidance/lists-of-parties-of-concern); (c) to any known end user or for any known end use related to the proliferation of nuclear, chemical or biological weapons or missiles, without first obtaining any export license or other approval that may be required by any U.S. government agency having jurisdiction with respect to the transaction; or (d) otherwise in violation of any export or import laws, regulations or requirements of any United States or foreign agency or authority. Consultant shall comply with any written quality standards and other policies that Storj provides to Consultant for performance of the Services.

8.4. Intellectual Property Rights. Each Deliverable is and will be an original work of Consultant, except for any Third Party Materials and Pre-Existing Intellectual Property incorporated therein as approved hereunder. Neither the Services nor Deliverables nor any element thereof will (i) infringe the Intellectual Property Rights of any third party or incorporate any third party's confidential information, or (ii) be subject to any restrictions or to any mortgages, liens, pledges, security interests, encumbrances or encroachments.

8.5. All Necessary Rights. Consultant has and will have all necessary rights to grant the licenses and make the assignments set forth in this Agreement (including having all necessary assignment agreements or other proprietary rights agreements in place with employees and subcontractors). In addition, Storj's (and its licensees') exercise of all rights assigned and granted under this Agreement will not require any third-party consents or clearances or any payment of fees, residuals, or other amounts of any kind to any third party.

8.6. Warranty Disclaimer. EXCEPT FOR THE WARRANTIES SET FORTH IN THIS AGREEMENT AND ANY SOW, EACH PARTY EXPRESSLY DISCLAIMS ANY AND ALL WARRANTIES OF ANY KIND OR NATURE, WHETHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

## 9. Ownership.

9.1. Pre-Existing Intellectual Property; Third Party Materials. Each Party and its respective Affiliates and licensors will retain all right, title, and interest in and to its own Pre-Existing Works. Consultant shall not incorporate into, embody in, or provide with any Deliverable any Third Party Materials or Pre-Existing Intellectual Property, unless Consultant (i) has specifically identified such Third Party Materials or Pre-Existing Intellectual Property in the applicable SOW or otherwise has obtained Storj's prior written consent and (ii) has obtained all third party rights necessary to provide the license to Storj as set forth herein. Consultant hereby grants Storj a non-exclusive, royalty-free, transferable, irrevocable, worldwide, perpetual right and license (with right to sublicense through multiple tiers) to make, have made, sell, use, import, export, execute, reproduce, distribute, modify, adapt, publicly display, publicly perform, make derivative works of, and disclose any Third Party Materials and Pre-Existing Intellectual Property incorporated into, embodied in, or provided with any Deliverable in connection with Storj's use or exploitation of such Deliverable and the Services and as otherwise necessary to enable Storj to exercise all of the rights assigned or licensed to Storj under this Agreement. The licenses above include a license to any present and future Intellectual Property Rights of Consultant that block or interfere with the rights assigned or licensed to Storj hereunder.

9.2. Ownership of Deliverables; Assignment of Rights. Consultant acknowledges that Consultant is being retained by Storj to perform the Services and to create certain Deliverables for Storj's exclusive use and benefit. Consultant acknowledges and agrees that Storj shall exclusively own all rights, title, and interest, including, without limitation, all Intellectual Property Rights, in and to any Deliverables in all stages of development and all information, ideas, concepts, improvements, discoveries, and inventions, whether patentable or not and whether or not reduced to practice, as well as all forms of expression of ideas which are the subject matter of copyright (including all drawings, memoranda, notes, records, files, correspondence, drawings, manuals, models, specifications, computer programs, and all other writings or materials of any type), developed or prepared by Consultant under this Agreement or an SOW hereunder in connection with the Services or Deliverables (collectively "**Work Product**"). Consultant agrees to promptly disclose all Work Product to Storj. Consultant hereby irrevocably assigns, transfers, and conveys, and shall cause Consultant's employees, consultants and affiliates, if any, to irrevocably assign, transfer and

convey, to Storj all of Consultant's right, title and interest in and to the Deliverables and Work Product, including all Intellectual Property Rights therein. To the fullest extent permitted by law, all copyrightable aspects of the Deliverables shall be deemed to be a "work made for hire" (as defined in Section 101 of Title 17 of the United States Code).

9.3. Waiver of Rights. If Consultant has any rights in a Deliverable that cannot be assigned to Storj (including any moral rights, such as the right to be named as author, the right to modify, the right to prevent mutilation and the right to prevent commercial exploitation), Consultant hereby unconditionally and irrevocably waives the enforcement of such rights and waives and quitclaims to Storj any and all claims and causes of action of any kind against Storj, its Affiliates, and its licensees (through multiple tiers) with respect to such rights, and agrees, at Storj's request, to consent to and join in any action to enforce such rights.

9.4. Further Assurances. Consultant acknowledges and agrees that Storj shall have the right to obtain, perfect, and enforce in its own name any Intellectual Property Rights in and to the Work Product. Consultant agrees to execute any documents and to take, and to cause any of its Representatives to take, any actions as may reasonably be necessary, or as Storj may reasonably request, for Storj to obtain, perfect, or enforce its rights in the Work Product. In the event that Storj is unable for any reason to secure Consultant's signature to any document required in connection with any of the foregoing and/or to apply for or execute any patent, copyright or other application with respect to any Work Product (including improvements, renewals, extensions, continuations, divisions or continuations in part thereof), Consultant hereby irrevocably designates and appoints Storj and its duly authorized officers and agents as Consultant's agents and attorneys-in-fact to act for and in its behalf and, instead of Consultant, to execute and file any such application and to do all other lawfully permitted acts to further the prosecution and issuance of any Intellectual Property Rights thereon with the same legal force and effect as if executed by Consultant.

**10. Payment.**

10.1. Fees. In exchange for Consultant's performance of the Services and other obligations under this Agreement, Storj shall pay Consultant the fees set forth in the applicable SOW ("**Fees**"). Consultant acknowledges that this Section 10 sets forth the only compensation which Consultant is entitled to receive in exchange for the Services and that Consultant shall not be entitled to any other payments, reimbursements, royalties or consideration of any kind unless otherwise expressly stated in an applicable SOW.

10.2. Invoice; Payment. Consultant will provide complete, correct invoices to Storj on a monthly basis (or such other basis as may be specified in the applicable SOW), each invoice to include for the applicable billing period a detailed description of the Services performed, the dates and time spent on each Service, the individual performing the Services for each time entry, the billing amount per time entry, the total billable amount, the total amount billed, and an itemized list of pre-approved expenses, with accompanying receipts, incurred by Consultant for the purpose of performing the Services. Storj shall pay all undisputed invoices within thirty (30) days of Storj's receipt thereof.

10.3. Expenses. No additional expenses are anticipated under this Agreement. However, if currently unforeseen circumstances demand that certain reasonable expenses should be borne by the Consultant solely and directly in the course and for the purpose of performing the Services, and these expenses are authorized and approved in advance by Storj ("**Expenses**"), Storj shall reimburse Consultant for such Expenses invoiced to Storj per Section 10.2 above and accompanied by receipts for each expense.

10.4. Taxes. It is understood and agreed by Consultant that the amounts set forth in applicable SOW shall include any and all taxes and contributions applicable to Consultant. Consultant shall, where applicable, separately list on its invoices any and all valid sales and other taxes on Services provided hereunder. Consultant shall be responsible for payment of all taxes applicable to Consultant arising out of its activities under this Agreement, including but not limited to, federal, state, local, and applicable foreign income tax, Social Security tax, unemployment insurance tax, and any other tax or business license fee as required. If Storj reasonably determines that applicable law requires that any taxes should be withheld from any payments of fees pursuant to this Agreement or an applicable SOW, Storj reserves the right to withhold such taxes and notify Consultant accordingly.

**11. Termination.**

11.1. Termination for Breach. Either Party may terminate this Agreement and/or any SOW hereunder if the other Party fails to cure any material breach within ten (10) days after receipt of written notice detailing the scope and nature of such breach. Storj may also terminate for breach immediately on written notice if Consultant commits three (3) or more material breaches within any 12-month period, even if such breaches are cured as provided above.

11.2. Termination for Bankruptcy, Convenience. Either Party may terminate this Agreement at any time when there is no SOW in effect upon ten (10) days advance written notice to the other Party, or if the other Party ceases operation without a successor or seeks protection under any bankruptcy, receivership, trust deed, creditors arrangement, composition or comparable proceeding, or if any such proceeding is instituted against such Party (and not dismissed within sixty (60) days thereafter). Storj may terminate this Agreement, including any or all SOWs hereunder, for convenience at any time upon thirty (30) days prior written notice to Consultant.

11.3. Payment on Termination. In the event of termination by Storj, Consultant shall invoice and Storj shall pay per Section 10 (“Payment”) above:

11.3.1. All amounts owed to the Consultant for any portion of the Services that have already been provided through the effective date of termination; and

11.3.2. The direct outlays and costs in connection with the Services that the Consultant has incurred before the notice of termination was received, which were specifically authorized by Storj and acknowledged by Storj to be its responsibility, and which the Consultant cannot otherwise make use of, provided that these outlays are not covered by the amount to be paid pursuant to clause 10.3 above..

11.3.3. Storj shall, upon payment of such final invoiced amount as described in Section 11.3.1 and Section 11.3.2 above, have no further liability to Consultant whatsoever for any further fees, expenses, or other payments.

11.4. Effect of Termination. Upon any expiration or termination of this Agreement or an SOW for any reason, or upon earlier request by Storj, Consultant shall promptly deliver to Storj all Deliverables, including without limitation all works in progress, and, pursuant to Section 3.4, return or destroy all Storj Materials.

11.5. Suspension of the SOW. Storj may temporarily suspend an SOW upon ten (10) business days prior written notice to Consultant. Storj shall state in the notice at what point in time (milestone) the SOW shall be suspended and from what date resumption of the SOW is planned. Consultant shall immediately, and no later than two (2) working days after receipt of notice, send Storj a summary of what functions and activities if any Consultant advises be maintained during the suspension period and any associated costs, and Storj shall instruct Consultant in writing whether it wishes to maintain any such functions and activities. The SOW shall be resumed upon written notice from

Storj. Storj shall pay Consultant the amount owed to Consultant for any portion of the SOW that has been accepted by Storj prior to suspension and compensate Consultant for the costs of any mutually agreed upon activities undertaken by Consultant during the suspension period.

**12. Independent Consultant.** Consultant shall perform services on behalf of Storj in the capacity of independent contractor, and not as an employee, partner, agent, joint venture, or partner. Consultant is not authorized to bind, nor shall it make any commitment, by contract or otherwise, binding upon Storj or represent that it has any authority to do so. Consultant shall be solely responsible and liable for any employment-related taxes, insurance premiums, disability and other insurance and employment benefits respecting Consultant personnel. Neither Consultant nor any of Consultant's employees, agents, or subcontractors shall be eligible for any benefits (including, without limitation, stock options, health insurance, worker's compensation benefits or retirement benefits) normally provided by Storj to its employees. Consultant accepts exclusive liability for complying with all applicable state and federal laws governing self-employed persons, including obligations such as payment of taxes, social security, disability and other contributions based on fees paid to Consultants and its agents or employees under this Agreement. Consultant hereby agrees to indemnify and defend Storj against any and all claims related to such taxes, benefits, or contributions described above, including penalties and interest.

**13. Solicitation Of Employees**. During the Term and for a period of twelve (12) months thereafter, in consideration for the mutual promises contained in this Agreement, each Party agrees not to solicit or hire, either directly or indirectly, for its own benefit or for the benefit of any third party (including any of such Party's Representatives) any of the other Party's or its Affiliates' personnel who first became known to such Party as a result of such individual's work under this Agreement, without the other Party's prior written consent. This restriction shall not apply with respect to responses to general job solicitations in any form, format, or media and will not apply with respect to candidates solicited or presented by recruiters or other such Third Parties.

**14. Solicitation Of Customers.** During the Term and for a period of twelve (12) months thereafter, in consideration for the mutual promises contained in this Agreement, Consultant agrees not to induce or attempt to induce, either directly or indirectly, for Consultant's benefit or for the benefit of any third party (including any of Consultant's Representatives) any customer, supplier, licensee, or other business relation of the Storj or its Affiliates to cease doing business with the Storj or its Affiliates or otherwise to provide similar services to such entities as provided by Storj or its Affiliates without Storj's prior written consent.

**15. Insurance.** At all times during the Term, Consultant will maintain adequate insurance to protect Consultant from the following: (i) claims under workers' compensation and state disability acts and other similar coverages applicable in other jurisdictions; (ii) claims for damages because of bodily injury, sickness, disease, or death that arise out of any negligent act or omission of Consultant; and (iii) claims for damages because of injury to or destruction of tangible or intangible property, including loss of use resulting therefrom, that arise out of any negligent act or omission of Consultant. Upon request, Consultant shall provide Storj with certificates of insurance or other evidence of coverage before commencing performance under this Agreement. Consultant shall provide adequate coverage for any Storj property under the care, custody or control of Consultant or Consultant's personnel.

**16. Limitation of Liability.** EXCEPT FOR ANY CLAIMS ARISING UNDER SECTION 3 (DATA PROCESSING), SECTION 8 (REPRESENTATIONS AND WARRANTIES), SECTION 17 (CONFIDENTIALITY; ACCESS; SECURITY), OR SECTION 19 (INDEMNIFICATION), NEITHER PARTY SHALL BE LIABLE FOR ANY LOSS OF USE, INTERRUPTION OF BUSINESS, LOST PROFITS, OR ANY INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND REGARDLESS OF THE FORM OF ACTION WHETHER IN CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT PRODUCT LIABILITY, OR OTHERWISE, EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. EXCEPT FOR ANY CLAIMS ARISING UNDER SECTION 8 (REPRESENTATIONS

AND WARRANTIES), SECTION 17 (CONFIDENTIALITY; ACCESS; SECURITY), OR SECTION 19 (INDEMNIFICATION), IN NO EVENT SHALL COMPANY'S AGGREGATE LIABILITY UNDER THIS AGREEMENT EXCEED THE FEES ACTUALLY PAID TO CONTRACTOR UNDER THE SOW WHICH GAVE RISE TO THE CLAIM IN THE IMMEDIATELY PRECEDING 12 MONTHS FROM THE DATE SUCH CLAIM FIRST AROSE. In the case of a breach by Storj of any of its obligations hereunder, Consultant's sole right and remedy shall be an action at law for damages, and Consultant specifically waives any right to injunctive or other equitable relief or to rescind any of the rights granted to Storj hereunder.

**17. Confidentiality; Access; Security.**

17.1. Except as expressly authorized in this Section 16.1, neither Consultant nor Consultant's Representatives shall disclose to any person or entity any Confidential Information of Storj (whether in written, oral, electronic or other form), or any other information which is obtained from Storj or otherwise prepared or discovered either in the performance of this Agreement, through access to Storj Systems (defined below), or while on Storj premises. Consultant and its agents, employees, and subcontractors agree to use such Confidential Information only to provide Services to Storj and for no other purpose. Consultant shall maintain adequate administrative, physical and technical safeguards to ensure the security and integrity of Confidential Information and shall take all reasonable steps to ensure that Confidential Information is held in strictest confidence and is not disclosed or distributed to or accessed by any third party. Consultant shall notify Storj in writing promptly upon discovery of any unauthorized access to or disclosure of Confidential Information and shall cooperate with Storj to remedy such breach. The provisions of this Section 17.1 shall not apply to any information that: (i) is rightfully known to Consultant prior to disclosure by Storj, (ii) is rightfully obtained by Consultant from any third party without restrictions on disclosure, (iii) is or becomes available to the public without restrictions, or (iv) is disclosed by Consultant with the prior written approval of Storj. Consultant may disclose Confidential Information solely to the extent required by valid legal process or court order provided Consultant notifies Storj in writing in advance and reasonably cooperates in any effort by Storj to prevent such disclosure or to obtain confidential treatment of such Confidential Information.

17.2. **Injunctive Relief**. Consultant recognizes and agrees that the use or disclosure of any Confidential Information, Materials, or Work Product in a manner inconsistent with the provisions of this Agreement will cause the Storj and its Affiliates irreparable damage for which adequate remedy at law may not be available. Accordingly, the Storj and its Affiliates shall be entitled to seek temporary and/or permanent injunctive relief against such breach or violation from any court of competent jurisdiction immediately upon request and without the need to post a bond. The right of the Storj and its Affiliates to seek injunctive relief shall not limit in any manner their right to seek other and/or additional remedies at law, in equity or otherwise.

17.3. **Ownership of Confidential Information**. All rights in and title to the Confidential Information supplied by Storj or an Affiliate or otherwise obtained or accessed by Consultant hereunder, shall remain with Storj or such Affiliate as applicable. Neither the execution and delivery of this Agreement, nor the furnishing of any Confidential Information shall be construed as granting to Consultant either expressly, by implication, estoppel or otherwise, any license under any invention, copyright, trade secret or patent now or hereafter owned or controlled by the party furnishing the same, nor any right to use, sell, develop, exploit or copy the Confidential Information made available to Consultant, except to fulfill the purpose of this Agreement.

17.4. **Security**. In providing Services hereunder, Consultant shall comply at all times with Storj's security requirements, incorporated herein by reference as well as those stated in an applicable SOW.

17.5. **Access to Storj Systems and Facilities**. Access, if any, to any Storj software, hardware or systems utilized or made available by Storj ("**Storj Systems**") is granted solely to allow Consultant to provide the Services and is limited to those specific Storj Systems, time periods, and personnel as are separately designated by Storj in writing from time-to-time. In connection with access to Storj Systems,

Consultant shall comply with all business control and information protection policies, standards, and guidelines as may be provided by Storj. Consultant shall not use Storj Systems during other time periods or allow access by individuals not authorized by Storj. Any other use of any Storj System is expressly prohibited. Without limiting the foregoing, Consultant represents and warrants that it has adequate security measures in place to comply with the above obligations and to ensure that access granted hereunder will not impair the integrity and availability of Storj Systems. Upon reasonable notice, Storj may audit Consultant to verify Consultant's compliance with these obligations. To the extent Consultant is granted access to Storj facilities, Consultant shall comply with any safety, control, protection, and other policies and guidelines as Storj may provide from time-to-time and shall be solely liable for its acts or omissions while at any site, including without limitation those resulting in personal injury or property damage. Consultant shall not remove (or allow any person to remove) any of Storj's Confidential Information or other property or materials from Storj facilities without the prior written consent of Storj. Consultant will perform background checks on its employees or authorized subcontractors, if such checks are appropriate for the position to be filled. Notwithstanding the foregoing, Consultant agrees that if Storj in its discretion determines that any Consultant agent, employee or authorized subcontractor is unacceptable for any reason, Consultant shall remove such individual from Storj's premises and deny such individual any access to Storj Systems (as requested) until otherwise notified by Storj. Consultant shall promptly replace such individual with an individual acceptable to Storj.

17.6. **Publicity.** Consultant shall not publicize or disclose the existence or terms of this Agreement to any third party without the prior written consent of Storj, except as may be required by law. In particular, no press releases or public announcement shall be made by Consultant without the written consent of Storj. Consultant shall not acquire any rights under this Agreement to use Storj's trademarks, service marks, or trade names in any advertising, publicity or promotion or other disclosures, or to express or imply any endorsement of Storj's products or services.

**18. Records.** Consultant shall keep and maintain accurate records in connection with its performance of the Services and all amounts charged to Storj hereunder for the term of this Agreement and for a period of three (3) years from the last date of Service under the final SOW completed hereunder, and Storj and/or its designated auditors may audit and make copies of all such records at Consultant's facilities or virtually during normal business hours on reasonable notice to Consultant.

**19. Indemnification.** Consultant shall defend, indemnify, and hold harmless Storj, its Affiliates and each of their respective officers, directors, employees, sublicensees, customers and agents (each, an "**Indemnified Party**") from and against any and all claims, losses, liabilities, damages, expenses and costs (including reasonable attorneys' fees and court costs) arising from or relating to: (i) any breach or alleged breach of any representation or warranty under this Agreement by Consultant or its employees, agents, or subcontractors; (ii) any Security Breach; (iii) any infringement or alleged infringement by Consultant, the Services, or any Deliverable of any third-party Intellectual Property Rights; or (iv) any death, personal injury or property damage arising from the Services or Deliverables or otherwise caused by Consultant or its employees, agents, or subcontractors (collectively, "**Claims**"). Storj shall give Consultant written notice of any such Claim, and Storj has the right to participate in the defense of any such Claim at its expense. In no event shall Consultant settle any Claim without Storj's prior written consent (which consent shall not be unreasonably withheld). Without limiting Consultant's other obligations hereunder, if Storj's use of the Deliverables (including any Pre-Existing Intellectual Property) is, or in Storj's opinion is likely to be, enjoined due to any claim of Intellectual Property Rights infringement or misappropriation, then Consultant, at its option and expense, will either: (a) procure for Storj a license to continue using the Deliverable in accordance with the terms of this Agreement; or (b) modify the allegedly infringing item to avoid the claim, without impairing the compliance of the Deliverable with the Specifications.

**20. Bankruptcy.** All rights and licenses granted to Storj under or pursuant to this Agreement are, and shall

otherwise be deemed to be, for purposes of Section 365(n) of the United States Bankruptcy Code (the "**Code**"), licenses to rights in "intellectual property," as defined under the Code. The Parties further agree that, in the event of the commencement of bankruptcy proceedings by or against Consultant under the Code, Storj shall be entitled, at its option, to retain all of its rights under this Agreement pursuant to Code Section 365(n).

**21. Background Check.** Subject to applicable law, this Agreement is contingent upon a satisfactory background check, which Company reserves the right to conduct, and the Agreement may be rendered null and void in Company's sole discretion based on information received in such background check.

**22. General.**

22.1. Assignment. Consultant may not assign this Agreement without the prior written consent of Storj and any attempt to do so will be void. Storj may assign this Agreement, in whole or in part, without Consultant's consent.

22.2. Storj Affiliates. All rights, benefits, and protections granted to Storj pursuant to this Agreement extend to its Affiliates, and such Affiliates may place orders for Services as "Storj" hereunder.

22.3. Notices. Any notice or consent under this Agreement shall be in writing and delivered by overnight courier service to the Party's address first set forth above.

22.4. Waiver. No provision of this Agreement shall be waived by any act, omission or knowledge of a Party or its agents or employees except by an instrument in writing expressly waiving such provision and signed by a duly authorized officer of the waiving Party.

22.5. Severability. If any provision of this Agreement is adjudged by any court of competent jurisdiction to be unenforceable or invalid, that provision shall be limited or eliminated to the minimum extent necessary so that this Agreement will otherwise remain in full force and effect.

22.6. Governing Law. This Agreement and all related actions and proceedings shall be governed by the laws of the State of Delaware and the United States without regard to conflicts of laws provisions thereof, and without regard to the United Nations Convention on the International Sale of Goods.

22.7. Arbitration. Any controversy, claim or dispute arising out of or related to this Agreement or the interpretation, performance, or breach hereof, including but not limited to alleged violations of state or federal statutory or common law rights or duties, shall be resolved solely and exclusively by final and binding arbitration initiated and conducted according to the JAMS/Endispute Comprehensive Arbitration Rules and Procedures in effect as of the date hereof, including the Optional Appeal Procedure provided for in such rules (the "**Arbitration Rules**"). The arbitration shall be conducted in Fulton County before three (3) neutral arbitrators (one arbitrator selected by each Party, and a third selected by the first two) and the members of any Appeal Panel shall be retired judges or justices of any state or federal court. Notwithstanding the foregoing, Storj may at any time seek injunctive or other equitable relief in any court of competent jurisdiction in Fulton County, Georgia, and both Parties hereby submit to the personal jurisdiction of such courts for any such actions. H.T. Initial

22.8. Survival. The Parties agree that the terms of Sections 3 (Data Processing), 6 (Access to Deliverables), 8 (Representations and Warranties), 9 (Ownership), 11.3 (Payment on Termination), 11.4 (Effect of Termination), and 13 (Solicitation of Employees), 14 (Solicitation of Customers), 16 (Limitation of Liability), 17 (Confidentiality), 18 (Records), 19 (Indemnification), 20 (Bankruptcy), and 21 (General) will survive any expiration or termination of this Agreement for any reason.

22.9. Entire Agreement; Precedence. Both Parties agree that this Agreement (including any executed SOWs) is the complete and exclusive statement of the mutual understanding of the Parties and supersedes and cancels all prior or contemporaneous written and oral agreements and communications relating to the subject matter hereof. Any amendments shall be effective only if made in writing signed by both Parties hereto. In case of any inconsistency or conflict between the terms of this Agreement and the terms of

an SOW hereunder, the terms of this Agreement shall govern and control except where the term at issue in the applicable SOW expressly states that it is the Parties' intent to supersede a specific term of this Agreement.

22.10 Counterparts. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which together shall be considered one and the same agreement. This Agreement may be executed by electronic signature in portable document format (.pdf), and an electronic signature in .pdf format shall constitute an original for all purposes. The Parties further agree that exchange of a fully executed Agreement (in counterparts or otherwise) by electronic transmission shall be sufficient to bind the Parties to the terms and conditions of this Agreement and shall have the same force and effect as delivery of original signatures.

22.11 Headings. Headings used in this Agreement are for ease of reference only and are not intended as, nor shall they be used as, an aid to interpretation.

**ACCEPTED AND AGREED** to as of the Effective Date by the Parties by signature of their authorized representatives below:

**Heather Trowbridge** (Consultant)

By: Heather Trowbridge

Name: Heather Trowbridge

Date: 2026-06-03

Address for Notices:

18844 Hampstead Heath Ct

Land O Lakes, FL

34638

heathertrowbridge1@gmail.com

**STORJ LABS, INC.** (Company)

By: Bryan Mangelson

Name: Bryan Mangelson
Title: SVP Ops

Date: 2026-06-03

Address for Notices:

legal@storj.io

**AND**

ATTN: Legal
1870 The Exchange SE Ste 220 PMB 75268
Atlanta, GA 30339-2171

**EXHIBIT A**

**STATEMENT OF WORK**

This Statement of Work (the "**SOW**") is entered into effective as of June 3, 2026 (the "**SOW Effective Date**") by and between Heather Trowbrigde, (email: heathertrowbridge1@gmail.com, address: 18844 Hampstead Heath Ct, Land O Lakes, FL) ("**Consultant**") and Storj Labs Inc. (11870 The Exchange SE Ste 220 PMB 75268 Atlanta, GA 30339-2171) ("**Storj**" or "**Company**") pursuant to that certain Master Services Agreement III for Consulting Services (the "**MSA**") entered into by and between the Parties effective as of attached MSA. All capitalized terms not defined herein shall have the meanings set forth in the MSA .

1. **Description of Services and Deliverables**. ***[as applicable]***

   i. Assist Financial Team with month end close process
   ii. Assist with tracking vendor payments
   iii. Assist with finance special projects as needed

2. **SOW Term**. The SOW Effective Date through the later of August. 31, 2026 (the "**SOW Term**").

3. **Fees**. Fees shall be invoiced and paid on the following basis:

<u>Fixed Fee</u>

Consultant shall deliver all Services and Deliverables hereunder on a fixed-fee basis for the amount listed below which includes all Fees and Expenses for completion of the Services:

**Fixed Fee**: $39,000

**Payment Schedule**: The fees will be payable as follows: six (6) equal installments of $6,500. The first installment is due upon signing of this MSA III and SOW, with subsequent payments due on June 15th, July 1st, July 15th, August 1st, and August 15th.

**Expenses:** No expenses are anticipated. To be reimbursable, an expense must first be approved in writing by Storj.

Any material change to the scope of work under this SOW shall be pre-approved in writing by both Parties. Under no circumstances shall the amount invoiced or paid hereunder exceed the above Fixed Fee without Storj's prior written consent.

4. **Storj Resources**. Any property and assets, whether tangible or intangible, provided by Storj to Consultant will remain Storj property and shall be subject to the protections in the Agreement.

5. **Consultant Resources.** Other than the Storj resources referred to above, Consultant shall provide all resources, tools, know-how and instrumentalities used to provide the Services listed herein.

6. **Staffing.**

   **a.** <u>Approval</u>. All employees, agents or approved subcontractors of Consultant involved in providing the Services ("**Personnel**") are subject to Storj's review and prior written approval prior to assignment of any

Personnel to the Storj account. Prior to such assignment, Storj shall have the right to review the resumes of and to interview all prospective Personnel. Storj may reject the assignment of any Personnel for any reason.

**b.** Changes and Removal. Consultant shall remove, replace or reassign any Personnel upon Storj's request, without additional charge or degradation of the Services. For any Consultant-initiated removals of Personnel from Storj's account, Consultant shall notify Storj and (consistent with applicable laws) explain the reasons for such action. Upon any removal or termination of any Personnel, Consultant shall immediately terminate such Personnel's access to all Storj Systems, Confidential Information and other materials.

**i.** Key Individuals. The individuals identified below ("**Key Persons**") are essential to the satisfactory performance of the Services. Consultant agrees that the availability and commitment of all such Key Persons is critical to successful performance of the Services. Accordingly, Consultant agrees that it will not reassign, remove or replace any Key Persons from the performance of the Services without Storj's express prior written consent. If, because of incapacitation or resignation, any Key Person becomes unavailable for the performance of the Services, Consultant will use its best efforts to replace such Key Person with a person of equal or better qualifications. The replacement person will be subject to Storj's prior written approval, which approval will not be unreasonably withheld or delayed.

***Key Persons:*** **Heather Trowbridge**

**8. Conflict of Interest Disclosure**. **Consultant** should list below any conflicts of interest it may have with performing the Services and any competitors to Storj that it performs services for during the term of this Term. Leaving this section blank will mean that Consultant represents and warrants that it has no such conflicts of interest. *Conflicts of Interest (if any) (if none, write "NONE")*:________________________________________

NONE

**9. Social Media.** Consultant is an independent consultant, not an employee, of Storj. As such, she will not represent that she or he is, or hold herself or himself out as, a permanent employee of Storj on LinkedIn or other social or other media.

**10. Storj Point of Contact for Consultant.** Consultant's principal point of contact at Storj shall be Perry Offer.

**ACCEPTED AND AGREED** to by the authorized representative of each Party:

**Heather Trowbridge**(Consultant)

Signature: Heather Trowbridge

Name: Heather Trowbridge
Date: 2026-06-03

**STORJ LABS, INC.** (Company)

Signature: Bryan Mangelson

Name: Bryan Mangelson
Date: 2026-06-03

# CERTIFICATE *of* SIGNATURE

REF. NUMBER
N3XJ8-EKV9E-ENPBF-DFDEL

DOCUMENT COMPLETED BY ALL PARTIES ON
03 JUN 2026 22:19:34 UTC

| SIGNER | TIMESTAMP | SIGNATURE |
|---|---|---|
| **BRYAN MANGELSON**<br>EMAIL<br>BRYAN@STORJ.IO | SENT<br>03 JUN 2026 19:14:51<br>VIEWED<br>03 JUN 2026 20:49:26<br>SIGNED<br>03 JUN 2026 20:49:48 | <br>IP ADDRESS<br>174.52.199.174<br>LOCATION<br>AMERICAN FORK, UNITED STATES |
| **RECIPIENT VERIFICATION** | EMAIL VERIFIED<br>03 JUN 2026 20:49:26 | |
| **HEATHER TROWBRIDGE**<br>EMAIL<br>HEATHERTROWBRIDGE1@GMAIL.COM | SENT<br>03 JUN 2026 19:14:51<br>VIEWED<br>03 JUN 2026 22:14:57<br>SIGNED<br>03 JUN 2026 22:19:34 | <br>IP ADDRESS<br>47.204.240.102<br>LOCATION<br>LUTZ, UNITED STATES |
| **RECIPIENT VERIFICATION** | EMAIL VERIFIED<br>03 JUN 2026 22:14:57 | |