**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **STORJ LABS INC.,** | ) | **Case No. 5:26-bk-00512** |
| | ) | |
| **Debtor.** | ) | **Chapter 11 Reorganization** |
| | ) | |

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE OBJECTION AND MOTION TO DISMISS BECAUSE WARD AND LAMB LACK STANDING AND THE COURT LACKS SUBJECT MATTER JURISDICTION

Debtor Storj Labs, Inc. ("Debtor") files this memorandum of law in support of its motion to strike the objection and motion to dismiss on the grounds Michael Ward ("Ward") and Robert Lamb ("Lamb") (collectively "Ward Lamb") lack standing and this Court lacks subject matter jurisdiction to entertain anything filed by Ward Lamb.

## INTRODUCTION

Ward Lamb do not possess any direct relationship with the Debtor that affords them standing to participate in this bankruptcy. Specifically, Ward Lamb are not creditors; not employees; not customers; have no written contractual agreement(s); no lawsuits; no judgments; and have no direct relationships with the Debtor. Instead, Ward Lamb in their alleged capacity as collateral agents[1] to other parties who entered into a contractual agreement dated May 12, 2026 with Inveniam Capital Partners, Inc. ("DIP Lender") ("Nonbinding Agreement") less than 90 days prior to Debtor's filing for chapter 11 relief claim they are parties-in-interest to the Debtor. *See* Exhibit A, Nonbinding Agreement. Of additional note, the Nonbinding Agreement did not require

[1] Ward Lamb have not produced any document outlining the duties and rights as collateral agents. Nor have they produced any document authorizing them to take any actions in this bankruptcy as collateral agents, particularly any document approving their actions from the other parties listed in the Nonbinding Agreement.

the DIP Lender to make its first payment until July 31, 2026, after the Debtor's July 26, 2026, bankruptcy filing. Moreover, the Debtor as a separate corporate entity did not sign the Nonbinding Agreement. *Id*. The Debtor further asserts that Ward Lambert's action meet the criteria for fraudulent transfer.

Ward Lamb ask this court to entertain their objection and motion to dismiss prior to them taking any affirmative action to facilitate their alleged rights under the Nonbinding Agreement, especially as it may relate to the Debtor, separate corporate entity who filed chapter 11. Instead without any legitimate right, Ward Lamb jumped into this proceeding, prematurely and before any potential right may be ripe, with the intended goal of pressuring the DIP Lender to cave to their demands for payments. Speculative and future rights do not provide them standing to attempt to expedite the collection process as relates to the DIP Lender, much less the Debtor.

**STATEMENT OF FACTS**

Debtor asserts the following facts:

1. The Debtor filed a voluntary chapter 11 petition for bankruptcy on July 26, 2026. *See* ECF No. 1.

2. The Debtor's schedules list 74 creditors exceeding seven (7) million to unsecure creditors. *See* ECF No. 102, Amended Schedules E/F.

3. The Debtor schedules do not reflect any secured creditors. *See* ECF No. 63, Schedule D.

4. The Debtor's schedules do not include Ward or Lamb or any of the other names listed on the Nonbinding Agreement as creditors. *See* ECF Nos. 63 and 102.

5. On July 26, 2026, the Debtor moved the court for interim post-petition financing and authority to use cash collateral. *See* ECF No.

6. On August 5, 2026, the Court entered "Interim Order Authorizing Post-Petition Financing, Use of Cash Collateral, and Scheduling Final Hearing" granting interim financing of $100,000 which allowed the debtor to satisfy its payroll for its remaining 11 employees due end of July 2026. *See* ECF No. 26,

7. The Court further scheduled a final hearing to occur on August 26, 2026. *Id*.

8. The Court's Order set August 21 as a deadline for any party to object to Debtor's motion for entry of a final order authorizing the post-petition financing and use of cash collateral. *Id*.

9. No creditor objected to the Court entering a final DIP order.

10. On August 21, 2026, Ward Lamb **who is not a creditor** filed "Objection and Reservation of Rights of Michael Wared and Robert Lamb to Debtor's Motion to Authorize Post-Petition Financing and Use of Cash collateral" ("Objection") by asserting that they were a party-in-interest because they have a contractual agreement with the DIP Lender that may allow them to collect against any equity of the Debtor. *See* ECF No. 58.

11. On August 25, 2026, the Court entered "Order Granting Motion to Continue Hearing on Final Post-Petition Financing, Use of Cash Collateral, to Enter Second Interim Order Authorizing Post-Petition Financing, to Use Cash Collateral, and to Continue Final Hearing and Objection Thereto" ("Second Interim Order").

12. The Second Interim Order authorized the use of $160,000 in additional post-petition financing. *Id*.

13. Nowhere in Ward Lamb's objection do they assert that they have a direct relationship or concrete relationship with the Debtor. *Id*.

14. Ward Lamb also filed "Motion of Collateral Agents to Dismiss Debtor's Chapter 11 Case Pursuant to 11 U.S.C. 1112(b)(1) or, in the Alternative, Change Venue". *See* ECF No. 69, Motion to Dismiss.

15. Ward Lamb claim that the DIP Lender pledged all equity interests in and all assets of the Debtor as part of the Nonbinding Agreement containing a pledge to certain assets of the DIP Lender. *Id*. at p. 3.

16. Conveniently, Ward Lamb avoid stating that the first payment under the Nonbinding Agreement became due on July 31, 2026, after the Debtor filed bankruptcy. *Id*.

17. The Nonbinding Agreement includes remedies upon a default of the Nonbinding Agreement, including "(i) accelerating the entire unpaid Principal Amount and all accrued interest thereon; (ii) enforcing the Lenders' security interest in the Collateral, including by foreclosing on and disposing of the Collateral in accordance with the Uniform Commercial Code; and (iii) exercising the Equity Conversion Right with respect to any unpaid portion of the Principal Amount and accrued interest." *Id*. at p. 9.

18. Nowhere in Ward Lamb's filings or any documentation provided to the Debtor do they assert that they have taken any affirmative steps to effectuate whatever collection rights they may or may not have against the DIP Lender. *Id; see* generally Objection.

19. Assuming the DIP Lender defaulted on the first payment of July 31, 2026, then pursuant to the explicit language in the Nonbinding Agreement, Ward Lamb may have the right to provide notice, accelerate, proceed to collection, including starting disposition or foreclosure of certain assets. *Id*.

20. The above-listed rights also would not allow Ward Lamb to ignore the automatic stay pursuant to 11 U.S.C. § 362 of the Bankruptcy Code.

21. It further does not void Ward Lamb's obligations to take certain steps to finalize any type of collection breach, including notice to proceed with foreclosure under applicable law.

## LEGAL STANDARD

Standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). The Supreme Court has stated that the standing requirement limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into "a vehicle for the vindication of the value interests of concerned bystanders." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982) (quoting *United States v. SCRAP*, 412 U.S. 669, 687, 93 S. Ct. 2405, 37 L. Ed. 2d 254 (1973)).

Challenges to jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure may be raised in one of two ways: as a facial attack or as a factual attack. *See Lutfi v. United States,* 527 F. App'x. 236, 241 (4th Cir. 2013). The Debtor asserts both a facial attack and a factual attack. In a facial attack, the Plaintiff is afforded the same procedural protections as he would be accorded when faced with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For a factual attack, the court should apply the standard applicable to a motion for summary judgment, under which the non-moving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 5612 (1992) ("[I]n response to a summary judgment motion [challenging the court's jurisdiction], the plaintiff … must 'set forth' by affidavit or other evidence 'specific facts,' which for the purposes of the summary judgment motion will be taken to be true.")

## ARGUMENT

## I. The Court Lacks Subject Matter Jurisdiction to Entertain Any Arguments from Ward Lamb Because Ward Lamb Do Not Have Any Relationship with the Debtor that Affords Them the Right to Participate in this Bankruptcy.

### i. *Section 1109(b) Does not Provide for a Free-For-All, Allowing Ward Lamb to Engage in this Bankruptcy as Tactic to Assert Collection Leverage Against Third Party Non-Debtor Separate Corporate Entity*.

Section 1109(b) of the Bankruptcy Code controls who may object to a plan. Section 1109(b) states that "a party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." A party wishing to object to a plan must also satisfy Article III standing, which courts have held is "effectively coextensive" with the party in interest standard under section 1109(b). Mainly, parties wishing to object must demonstrate sufficient injury. Ward Lamb have no rational reason to interject themselves in this bankruptcy other than to pressure the DIP Lender. Nothing addresses the current situation better than one bankruptcy court noting that "[i]t is easy to imagine cases involving well-funded, very active, and aggressive parties . . . rais[ing] a myriad of objections to confirmation, with many of them going to aspects of the plan that do not by their terms affect the legal or contractual basis of their relationships with the [d]ebtor, or those parties' own options in those relationships." A.P.I., 331 B.R. at 855. A party in interest "must still satisfy the general requirements of the standing doctrine", including "both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *In re Quigley Co.*, 391 B.R. 695, 702-03 (Bankr. S.D.N.Y. 2008); *see also In re: Ashland Natural Resources*, E.D. Va.; *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir.1992) (Posner, J.)); *see also Savage & Assoc., P.C. v. Mandl (In re Teligent, Inc.)*, 417 B.R. 197, 2010 (Bankr. S.D.N.Y. 2009) (in discussing Section 1109(b), stating that "a party must show that it has 'a direct financial stake in the outcome of the case.' ")

(quoting *Doral Ctr., Inc. v. Ionosphere Clubs, Inc. (In re Ionosphere Clubs, Inc.)*, 208 B.R. 812, 814 (S.D.N.Y. 1997)).

Pursuant to this system, courts generally will only hear the arguments of parties who have a direct stake in the consequences of a proceeding. Thus a party who is not directly "aggrieved" by the construction of a provision of the Plan would lack the requisite standing to be heard."); *In re Drexel Burnham Lamb Grp., Inc.*, 138 B.R. 717, 721 (Bankr. S.D.N.Y. 1992) (holding that where equity in a Chapter 11 debtor was worthless, an equity holder had "no stake" in a controversy that had been settled amongst the creditors that did). Thus, the Court "must assess whether [a party] has standing not just to raise a general objection to an order, but whether appellant has standing to advance specific arguments in opposition to that order." *In re Motors Liquidation*, 430 B.R. at 92 (citing *Kane v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 843 F.2d 636, 642–43 (2d Cir. 1988) (holding that, under the prudential standing doctrine, appellant had standing to raise only certain of his challenges to an order confirming a plan)); *see also In re Quigley*, 391 B.R. at 705 (citing cases for proposition that "the court should decide questions of standing, particularly, in multi-party, multi-issue confirmation proceedings, on an issue-by-issue basis."). Courts have also held that standing cannot be established where an objecting party's recoveries are based on remote and hypothetical redressability. *See In re SRC Liquidation LLC*, 2019 WL 4386373, at *5, 2019 Bankr. LEXIS 2851, at *10-14 (Bankr. D. Del. Sept. 12, 2019) (holding an unsecured creditor did not have standing because, among other reasons, its requested relief would require the creditor to "jump several lofty hurdles to even approach the chance to receive. . . proceeds").

Here is perfect example when careful consideration of standing is imperative. Without that careful consideration of standing, unaffected but tangential entities could insert themselves into

the bankruptcy process, resulting in undue delay in the resolution of a case and increased costs to the estate. *See In re Deist Forest Prods., Inc.*, 850 F.2d 340, 341 (7th Cir. 1988) ("The limits on standing are vital in bankruptcy, where clouds of persons indirectly affected by the acts and entitlements of others may buzz about, delaying final resolution of cases."). "Overly lenient standards may potentially overburden the reorganization process by allowing numerous parties to interject themselves into the case on every issue, thereby thwarting the goal of a speedy and efficient reorganization." *Ionosphere Clubs*, 101 B.R. at 850. Ward Lamb have no rational objective to participate in this bankruptcy, except a desire to use this bankruptcy as leverage to pressure a separate corporate entity to pay them.

*ii. Standing Requires Ward Lamb to Show They Suffered Concrete and Particularized Injury*

Constitutional standing, otherwise known as Article III standing, "'imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III.' " *In re Quigley*, 391 B.R. at 702 (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). A court must consider "'whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.' " *Id.* (quoting *Warth*, 422 U.S. at 498–99, 95 S.Ct. 2197); *accord Singleton v. Wulff,* 428 U.S. 106, 112, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (The first question in the standing inquiry is "whether the plaintiff-respondents allege 'injury in fact,' that is a sufficiently concrete interest in the outcome of their suit to make it a case or controversy subject to a federal court's Art. III jurisdiction"). "It is well settled that as an irreducible constitutional minimum, Article III standing requires that: (1) the plaintiff suffer an injury in fact; (2) the injury be fairly traceable to the challenged conduct; and (3) the injury will likely be redressed by a favorable decision from the court." *In re Motors*

*Liquidation*, 430 B.R. at 92 (internal citations and quotations omitted). "An injury in fact is an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal citations and quotations omitted).

Additionally, a litigant must demonstrate prudential standing, in that a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *In re Quigley*, 391 B.R. at 702 (quoting *Warth*, 422 U.S. at 499, 95 S.Ct. 2197). "Prudential limitations on standing play an especially important role in bankruptcy proceedings [since] [b]ankruptcy is often a zero-sum game in which every creditor may be affected by a dispute involving the estate and a third party. *In re Quigley*, 391 B.R. at 702-03 (citing *Kane v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 843 F.2d 636, 644 (2d Cir. 1988)). This is because "[p]roceedings would quickly grind to a halt if the court had to hear every party on every issue ...Granting peripheral parties status as parties in interest thwarts the traditional purpose of bankruptcy laws which is to provide reasonably expeditious rehabilitation of financially distressed debtors with a consequent distribution to **creditors** who have acted diligently.'" *In re Quigley*, 391 B.R. at 702-03 (quoting *Krys v. Official Committee of Unsecured Creditors of Refco Inc. (In re Refco, Inc.)*, 505 F.3d 109, 118 (2d Cir. 2007)).

Ward Lamb desire for this Court to ignore even the most fundamental tenets of bankruptcy law protecting a debtor, and the most basic tenets of collection laws requiring them to take affirmative steps before they have any right to try to attack any asset of the Debtor. Even if they get some type of judgment against the DIP Lender in the future, then there are procedural steps that they would have to undertake to get to the Debtor's equity or assets. One of those procedural steps would be to file a proof of claim, and to move this Court for leave from the automatic stay.

Not jump from alleged default days after the bankruptcy filing to seizure of the Debtor's equity and assets, without even effectuating a judgment against the DIP Lender.

*iii. Ward Lamb Cannot Illustrate How the Debtor's Chapter 11 Bankruptcy Has any Direct Effect on their Alleged and Potential Future Rights*

The United States Bankruptcy Court in the Eastern District of Virginia addressed the standing requirement of Article III of the Constitution, which provides instructive guidance to this Court. *See In re: Alpha Natural Resources, Inc.,* 544 B.R. 848 (Bankr. E.D. Va. 2016). The Eastern District Bk Court noted that a party must have standing to meet the Article III case or controversy requirement. *Id*. at 853. Under Supreme Court precedent, a party must have suffered a "concrete and particularized injury in fact" that is "fairly traceable to the challenged action of the defendant, and that can be redressed by a favorable judicial decision" to demonstrate standing. *See Lexmark Int'l., Inc. v. Static Control Components, Inc.,* —— U.S. ——, 134 S.Ct. 1377, 1386, 188 L.Ed.2d 392 (2014) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The injury must be concrete and not "conjectural or hypothetical." *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). "A litigant must clearly and specifically set forth facts sufficient to satisfy these Article III standing requirements." *Id.*

Article III of the Constitution requires that judicial power only extends where there is an active case or controversy. *Brown v. Bureau of Alcohol, Tobacco, Firearms, and Explosives,* 704 F.Supp.3d 687, 695 (N.D. W.Va. 2023). A plaintiff establishes that they have standing to pursue their claims by showing, that there is an injury-in fact, causation, and redressability. *Id.* at 696. The Fourth Circuit has held that a plaintiff must establish that he has standing to challenge each provision of an ordinance by showing he was injured by application of those provisions. *EQT Production Company v. Wender*, 191 F.Supp.3d 583, 590 (S.D. W. Va. 2016) (quotations omitted). "To establish an injury-in-fact, a plaintiff must "show that he or she suffered 'an invasion of a

legally protected interest' that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Brown*, 704 F.Supp.3d at 696. The court will be required to examine the nature of the violation "to ensure that they raise a risk of harm." *Piper v. Meade & Associates, Inc.*, 282 F.Supp.3d 905, 910 (D. Md. 2017).

Regarding the first element to show an injury-in-fact, Ward Lamb has not suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent as opposed to being conjectural or hypothetical. The second element, causation, requires the demonstration of a traceable connection between the alleged injury-in-fact and the alleged conduct of the defendant. *Miller v. Dish Network*, 326 F.Supp.3d 51, 58 (E.D. Va. 2018). There is no evidence to suggest that Ward Lamb suffered or will suffer any harm relating to the Debtor's bankruptcy. Finally, redressability requires that it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief he seeks in suing. *Miller*, 326 F.Supp.3d at 57. It is speculative, at best, whether Ward Lamb's alleged contract with the DIP Lender will be remedied by this action. Accordingly, Ward Lamb cannot satisfy the redressability element of showing an injury-in-fact.

Second, the Bankruptcy Court in the Eastern District of Virginia noted that section 1109(b) of the Bankruptcy Code imposes an additional standing requirement for a party to be heard in a chapter 11 case: "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." *Alpha Natural Resources Inc.,* 544 B.R. at 853. The Eastern District Bk court explained that, because the environmental parties did not fall into any of the specified categories listed in section 1109(b), to have standing, they must be categorized as a "party in interest." *Id*. at 856.

Similar to the environmental parties in *Alpha Natural Resources*, Ward Lamb do not meet the specified categories to appear in this bankruptcy. The only avenue that Ward Lamb may have is if this Court finds that they are parties-in-interest. The Fourth Circuit found that the phrase "party in interest" stands for "one who has a pecuniary interest in the distribution of assets to creditors." *Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir.2003) (citing *Willemain v. Kivitz*, 764 F.2d 1019, 1022 (4th Cir.1985)). Similarly, in § 102 of the Code, the Fourth Circuit stated that a "party in interest" is "generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings." *In re Hutchinson*, 5 F.3d 750, 756 (4th Cir.1993) (quoting *White Cty. Bank v. Leavell (In re Leavell)*, 141 B.R. 393, 399 (Bankr.S.D.Ill.1992)). Relying on the previous Fourth Circuit rulings, the United States District Court for the Eastern District of Virginia concluded that "'a party in interest' under Title 11 includes the debtor itself, a trustee, or a creditor." *Alpha Natural Resources*, 544 B.R. at 855; citing *In re Alexandria Surveys Int'l., LLC*, 500 B.R. 817, 820 (E.D.Va.2013) (defining "party in interest" under § 350(b) of the Bankruptcy Code).

Other circuits have adopted similar definitions. Interpreting § 1109(b), the Seventh Circuit stated, "the list of 'parties in interest' is not exhaustive, but does suggest that such a party is someone who has a legally recognized interest in the debtor's assets, namely the debtor ... and the creditors." *In re C.P. Hall Co.*, 750 F.3d 659, 661 (7th Cir.2014); *see also* 7 Collier on Bankruptcy ¶ 1109.02[1] (Alan A. Resnick & Henry J. Sommer eds., 16th Ed.2015) ("In general, a 'party in interest' under section 1109(b) is any person with a direct financial stake in the outcome of the case...."). The Third Circuit has held that a "party in interest" under § 1109(b) is "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding." *In re Global Indus. Tech., Inc.*, 645 F.3d 201, 210 (3d. Cir.2011) (quoting *In re James Assocs.*, 965 F.2d 160, 169 (7th

Cir.1992)). The Second Circuit likewise recognized that under § 1109(b) "parties in interest typically have a financial stake in the outcome of the litigation...." *In re Teligent Inc.*, 640 F.3d 53, 60 (2d. Cir.2011).

As reflected in the Nonbinding Agreement, Ward Lamb have a long way to travel before they get to the stage of having future harm. Right now, Ward Lamb have nothing more than an agreement with a separate corporate entity. Before they can exercise any potential rights against the Debtor, Ward Lamb have to proceed to enforce the Nonbinding Agreement with the DIP Lender. Even if Ward Lamb get through that stage, then Ward Lamb's only potential remedy against the Debtor would relate to future equity that would have passed to the DIP Lender. When a party tries to intervene in a bankruptcy without standing, the court lacks subject matter jurisdiction to hear anything from that party. Ward Lamb have no legitimate grounds to participate in this bankruptcy.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully files this memorandum of law in support of its motion to strike objection and to dismiss for lack of subject matter jurisdiction.

**STORJ LABS, INC.**

**By Counsel:**

*/s/ Christopher R. Arthur*

Bruce Jacobs (WV Bar No. )
Christopher R. Arthur (WV Bar No. 9192)
Spilman Thomas & Battle, PLLC
300 Kanawha Boulevard, E. (25301)
P. O. Box 273
Charleston, WV 25321
304.340.3800; 304.340.3801 (*facsimile*)
carthur@spilmanlaw.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **STORJ LABS INC.,** | ) | **Case No. 5:26-bk-00512** |
| | ) | |
| **Debtor.** | ) | **Chapter 11 Reorganization** |
| | ) | |

**CERTIFICATE OF SERVICE**

I, Christopher R. Arthur, counsel for defendant Credit Acceptance Corporation, do hereby certify that on September 8, 2026, I filed the foregoing ***Memorandum of Law in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction*****,** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

*/s/ Christopher R. Arthur*
Christopher R. Arthur (WV Bar No. 9192)