**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **STORJ LABS INC.,** | ) | **Case No. 5:26-bk-00512** |
| | ) | |
| **Debtor.** | ) | **Chapter 11 Reorganization** |
| | ) | |

**DEBTOR'S RESPONSE IN OPPOSITION TO MOTION OF COLLATERAL AGENTS TO DISMISS DEBTOR'S CHAPTER 11 CASE PURSUANT TO 11 U.S.C. 1112(B)(1) OR, IN THE ALTERNATIVE, CHANGE VENUE**

Storj Labs, Inc., debtor-in-possession in the above-captioned case (the "Debtor"), by counsel, responds in opposition to the *Motion of Collateral Agents to Dismiss Debtor's Chapter 11 Case Pursuant to 11 U.S.C. 1112(B)(1) or, In the Alternative, Change Venue* (the "Motion") [ECF No. 69] filed by Michael Ward and Robert Lamb, in their capacity as Collateral Agents for certain entities with liens on shares of the Debtor (the "Movants"). In support of its opposition, Debtor states as follows:

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the North District of West Virginia (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The Debtor confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with the Motion to Dismiss to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**Memorandum Included Within Response**

3. Pursuant to Local Rule 9013-1(a)(2), Debtor includes its legal authorities, factual assertions, and analysis in this response in lieu of submitted a supporting memorandum.

**Factual Background**

Debtor is a company that provides decentralized cloud storage services, primarily to individual users and a few enterprise clients. Over time, Debtor started growing its sales team in an attempt to target large enterprise clients with an aim to increase its revenue for its core product, Object Storage. Unfortunately, the rising costs of payroll and additional technology needed for its expansion soon overtook Debtor's income. Due to key creditor threats and pressure, Debtor was forced to file this Case on an expedited timeline to preserve its ability to continue as a viable entity and to have an opportunity to restructure in a timely manner.

**Argument**

**I. MOVANTS LACK STANDING**

"Section 1109(b) of the Bankruptcy Code addresses which stakeholders can participate, and to what extent, in these reorganization proceedings:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

*Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268, 272-73 (2024) (quoting 11 U.S.C. 1109(b)). "Courts must determine on a case-by-case basis whether a prospective party has a sufficient stake in reorganization proceedings to be a 'party in interest.'" *Id.* at 277. According to the Supreme Court,

> To start, § 1109(b) provides an illustrative but not exhaustive list of parties in interest. See *supra*, at 1421. A common thread uniting the seven listed parties is that each may be directly affected by a reorganization plan either because they have a financial interest in the estate's assets (the debtor, creditor, and equity security holder) or

> because they represent parties that do (a creditors' committee, an equity security holders' committee, a trustee, and an indenture trustee). "The general theory behind [§ 1109(b)] is that anyone holding a direct financial stake in the outcome of the case should have an opportunity (either directly or through an appropriate representative) to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest." 7 Collier on Bankruptcy ¶1109.01 (16th ed. 2023).

*Id.* at 277-78.

Movants' interest in this Case is tenuous, at best. According to Movants, who fail to attach any documents as evidence in support of their alleged interest in Debtor, they acquired a security interest in Iveniam's equity interest in Debtor and a security interest in all of Debtor's assets via a Security Agreement dated May 11, 2026, between Movants and Inveniam stemming from an alleged, but not provided, Forbearance Agreement dated May 12, 2026 between Movants and Inveniam. Curiously missing from any allegations made by Movants is an agreement between Movants and Debtor, or any evidence of Debtor's indebtedness to Movants. Debtor has been provided what it believes to be the Forbearance Agreement dated May 12, 2026 and Security Agreement dated May 11, 2026 and has attached it hereto as **Exhibit A**.

Movants have not demonstrated that they have a valid security interest in Debtor's assets, or that they have a financial interest in Debtor's reorganization direct enough to grant them "party in interest" status that would allow them to request the relief in the Motion.

Whether a party has a valid security interest in a debtor's assets is determined by state law. *In re Blackjewel L.L.C.*, 2020 WL 7348228, at *9 (Bankr. S.D. W. Va. Dec. 7, 2020). "[A]bsent a compelling federal interest which dictates otherwise, bankruptcy courts apply the choice-of-law rules of the state in which they sit whether adjudicating bankruptcy-related disputes or disputes over a debtor's interest in property." *In re Gorman*, 2017 WL 2838105, at *4 (Bankr. N.D. W. Va. June 30, 2017). Here, the Forbearance Agreement dated May 12, 2026 and Security Agreement dated May 11, 2026 state they are governed by the laws of the State of Delaware. Ex. A, p. 12.

In Delaware, the grant of security interests is governed by the Delaware Uniform Commercial Code. Enforceability of security interests is governed by Del. Code Ann. § 9-203(b), which provides:

> (b) *Enforceability.* -- Except as otherwise provided in subsections (c) through (k), a security interest is enforceable against the debtor and third parties with respect to the collateral only if:
>
> (1) value has been given;
>
> (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
>
> (3) one of the following conditions is met:
>
> (A) the debtor has signed a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned;
>
> (B) the collateral is not a certificated security and is in the possession of the secured party under Section 9-313 pursuant to the debtor's security agreement;
>
> (C) the collateral is a certificated security in registered form and the security certificate has been delivered to the secured party under Section 8-301 pursuant to the debtor's security agreement;
>
> (D) the collateral is controllable accounts, controllable electronic records, controllable payment intangibles, deposit accounts, electronic documents, electronic money, investment property, or letter-of-credit rights, and the secured party has control under Section 7-106, 9-104, 9-105A, 9-106, 9-107, or 9-107A pursuant to the debtor's security agreement; or
>
> (E) the collateral is chattel paper and the secured party has possession and control under Section 9-314A pursuant to the debtor's security agreement.

Movants have not claimed to have provided any value to the Debtor. Nor have Movants claimed that Debtor authenticated the Security Agreement dated May 11, 2026 or any other security agreement. As such, Movants have failed to allege or evidence a valid security interest under Delaware law.

In Delaware, a person can be bound as a debtor by a security agreement entered into by another person, under certain circumstances. Section 9-203(d) provides:

> (d) *When person becomes bound by another person's security agreement.* -- A person becomes bound as debtor by a security agreement entered into by another person if, by operation of law other than this Article or by contract:

> (1) the security agreement becomes effective to create a security interest in the person's property; or
> (2) the person becomes generally obligated for the obligations of the other person, including the obligation secured under the security agreement, and acquires or succeeds to all or substantially all of the assets of the other person.

Del. Code Ann. § 9-203(d). Here, again, Movants have alleged no facts showing that the Security Agreement dated May 11, 2026 would become effective against Debtor's property. And Movants have alleged no facts whereby Debtor became obligated for Inveniam's alleged debts to Movants, nor that Debtor acquired or succeeded to Inveniam's assets.

To the extent Movants claim that Inveniam, not the Debtor, is the "debtor" capable of pledging Debtor's assets as collateral upon which Movants' security interest alleged attached, Movants have alleged, at best, that Inveniam mistakenly claimed to have ownership of Debtor's assets when Inveniam made its pledge to Movants. Delaware law is clear that "'[a]s a rule, parent and subsidiary corporations are separate entities, having separate assets and liabilities.... The parent's ownership of all of the shares of the subsidiary does not make the subsidiary's assets the parent's.... Hence, the parent's creditors have no claim to the subsidiary's assets, and *vice versa.*'" *Roseton OL, LLC v. Dynegy Holdings Inc.*, 2011 WL 3275965, at *15, n.110 (Del. Ch. July 29, 2011) (quoting *In re Regency Hldgs. (Cayman), Inc.*, 216 B.R. 371, 375 (Bankr.S.D.N.Y.1998)).

Here, Movants point to language in the Security Agreement dated May 11, 2026, wherein Inveniam allegedly described its Collateral as: "All equity interests in, and all assets of , [Debtor] and its subsidiaries." Ex. A, p. 28. Inveniam acquired Debtor in October 2025 when it purchased all of Debtor's shares. Debtor, however, has maintained itself as a separate legal entity, controlling and owning its assets, handling its own liabilities, maintaining its pre-existing customers, suppliers, and community relationships, and having its own employees. Debtor is merely a subsidiary of Inveniam and its acquisition by Inveniam did not effect a transfer of all of Debtor's assets to Inveniam. Since

Delaware law presumes and respects the separateness of parent and subsidiary companies, including the separateness of assets and liabilities, absent evidence to the contrary, which Movants have not provided, Debtor maintained ownership and control over its assets and any grant of a security interest in such assets by Inveniam was unenforceable.

In sum, Movants have not claimed, nor can they claim, that Debtor granted them a security interest in Debtor's assets. To the extent that Inveniam purported to have granted Movants a security interest in Debtor's assets, that grant was mistaken as Debtor remained a subordinate, yet separate, corporate entity from Inveniam who maintained ownership and control of its assets. Proof of that mistake can be found in the Debtor-In-Possession Credit Agreement between Inveniam and Debtor wherein Inveniam was granted a security interest on all of Debtor's assets. Why would Inveniam require the grant of a security interest in Debtor's assets if it already was the owner of all of Debtor's assets? Since Debtor did not grant Movants a security interest in its assets and since Inveniam did not have a direct interest in Debtor's assets nor could they transfer rights in the Debtor's assets absent Debtor's consent, Movants did not acquire a valid security interest in Debtor's assets.

If Movants lack a security interest in Debtor's assets, the only other interest they claim to have in this Case is their security interest in Inveniam's equity interest in Debtor. If that is their only interest in Debtor's reorganization, then that interest is far too attenuated to be considered a "party in interest" permitted to interfere on any matter relating to Debtor's reorganization efforts. As the Supreme Court noted, a "party in interest" is one that will be directly financially affected by a debtor's reorganization. Here, the only effect Debtor's reorganization will have on Movants is a appreciation or depreciation of value in an asset that constitutes a portion of collateral pledged by a non-debtor entity that Movants have not seized.

In sum, Movants' interest in Debtor's reorganization is too remote and speculative to grant then "party in interest" standing to request the relief in the Motion. As such, the Motion should be stricken with prejudice.

## II. THE PURPOSE OF BANKRUPTCY

According to the Supreme Court, "[o]ne of the primary purposes of the Bankruptcy Act is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934). Regarding business organizations, Congress stated that

> The purpose of a business reorganization case, unlike a liquidation case, is to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders. The premise of a business reorganization is that assets that are used for production in the industry for which they are designed are more valuable than those same assets sold for scrap….Cash flow problems may develop, and require creditors of the business, both trade creditors and long-term lenders, to wait for payment of their claims. If the business can extend or reduce its debts, it often can be returned to a viable state. It is more economically efficient to reorganize than to liquidate, because it preserves jobs and assets.

H.R. Rep. N. 95-595, at 220 (1978).

In designing the modern chapter 11, Congress dictated that "[i]t should be distinguished from the bankruptcy liquidation under chapter 7 or the adjustment of the debts of an individual with regular income under chapter 13." S. Rep. 95-959, at 9 (1978). Regarding the powers vested in business debtors, Congress intended that the debtor is to "[do] what is necessary to reduce the business's losses, by selling unprofitable divisions, by closing certain plants or stores, by reducing the workforces, or by rejecting or renegotiating burdensome contracts." H.R. Rep. N. 95-595, at 220, at 221.

## III. NO CAUSE EXISTS TO DISMISS UNDER 11 U.S.C. § 1112(b)

Movants seek to have this Case dismissed pursuant to the Court's inherent power under 11 U.S.C. § 105(a) and statutory provision 11 U.S.C. § 1112(b) for Debtor's alleged bad faith. Section 105(a) of the Bankruptcy Code provides that:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

The Fourth Circuit interprets this statute as granting bankruptcy courts the power to sua sponte dismiss bankruptcy petitions for lack of good faith. *In re Kestell*, 99 F.3d 143, 149 (4th Cir. 1996). According to the Fourth Circuit, the good faith requirement

> prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefiting them in any way or to achieve reprehensible purposes. Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with "clean hands."

*Id.* at 147 (quoting *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986). Courts routinely combine their analysis for dismissal of chapter 11 cases pursuant to section 105(a) with the analysis under section 1112(b). *See, e.g., In re Mohammad*, 596 B.R. 34, 41 (Bankr. E.D. Va. 2019); *In re A-1 Specialty Gasolines, Inc.*, 238 B.R. 876, 878 (Bankr. S.D. Fla. 1999).

Section 1112(b)(1) of the Bankruptcy Code provides that, "on request of a party in interest, and after notice and a hearing the court shall…dismiss a case under this chapter…for cause." 11 U.S.C. § 1112(b)(1). "Cause," for the purposes of § 1112(b), is defined in 1112(b)(4):

> (4) For purposes of this subsection, the term "cause" includes—
>
> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

> (B) gross mismanagement of the estate;
> (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
> (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
> (E) failure to comply with an order of the court;
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
> (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
> (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
> (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;
> (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
> (K) failure to pay any fees or charges required under chapter 123 of title 28;
> (L) revocation of an order of confirmation under section 1144;
> (M) inability to effectuate substantial consummation of a confirmed plan;
> (N) material default by the debtor with respect to a confirmed plan;
> (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
> (P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. § 1112(b)(4). While not enumerated, some courts, including those in the Fourth Circuit, have found that bankruptcy cases may also be dismissed for a debtor's lack of "good faith." *In re Premier Auto. Servs., Inc.*, 492 F.3d 274, 279 (4th Cir. 2007) ("The right to file a Chapter 11 bankruptcy petition is conditioned upon the debtor's good faith—the absence of which is cause for summary dismissal.").

In the Fourth Circuit, "a lack of good faith in a Chapter 11 petition requires a showing of 'objective futility' and 'subjective bad faith.'" *In re Premier Auto. Servs., Inc.*, 492 F.3d at 279– 80 (quoting *Carolin Corp. v. Miller*, 886 F.2d 693, 700–01 (4th Cir. 1989)). "The objective test focuses on whether 'there exists the realistic possibility of an effective reorganization.'" *Id.* at 280 (quoting *Carolin*, 886 F.2d at 698). "The subjective tests asks whether a Chapter 11 petition is motivated by

an honest intent to effectuate reorganization or is instead motivated by some improper purpose." Id. Subjective bad faith includes "'abuse of the reorganization process'" or "'caus[ing] hardship or [delaying] creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay.'" *Id.* (quoting *Carolin*, 886 F.2d at 702). Furthermore, lower courts have developed some indicia of bad faith filings, including:

> 1. The debtor has one asset;
> 2. Secured creditors' liens encumber the asset;
> 3. There are generally no employees except for the principals and there is no ongoing business activity;
> 4. The debtor has little or no cash flow and no available sources of income to sustain a plan of reorganization or make adequate protection payments;
> 5. There are few, if any, unsecured creditors whose claims are relatively small;
> 6. There are allegations of wrongdoing by the debtor or its principals;
> 7. The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of secured creditors to enforce their rights;
> 8. The debtor is afflicted with the "new debtor's syndrome" in which a one asset entity is credited or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors;
> 9. There is no realistic possibility of reorganization of the debtor's business;
> 10. The reorganization essentially involves a two-party dispute; and
> 11. Bankruptcy offers the only possibility of forestalling loss of the property.

*In re Kincaid*, 2001 WL 1806039, at *6–7 (Bankr. D. S.C. Nov. 16, 2001). While courts have enumerated several indicia of bad faith, no one factor should be considered alone and courts instead consider the totality of circumstances. *In re Fairfield TIC, LLC*, 594 B.R. 852, 861 (Bankr. E.D. Va. 2018). "When attacking a debtor's good faith in filing a petition, the creditor must establish a prima facie showing of the debtor's lack of good faith….Once this prima facie showing is made, the debtor has the burden of proving that the petition was filed in good faith." *In re Paolini*, 312 B.R. 295, 305 (Bankr. E.D. Va. 2004).

Here, the Movants fail to make the prima facie showing of bad faith because the Debtor has demonstrated an ability to get funding sufficient to prepare, seek confirmation, and effectuate a plan of reorganization; therefore, Movants cannot meet the objective futility prong of the Fourth Circuit's

test. Furthermore, Movants' allegations of "subjective bad faith" consist merely of their contention of improper venue and speculation that Debtor will not be able to meet its reporting and disclosure obligations. As discussed in detail below, due to Debtor's novel and innovative business, traditional venue concepts would hinder reorganization and cause the Debtor, its creditors, and all other parties in interest to incur unnecessary expenses and inconveniences that would be avoided by this Court maintaining the Case. Finally, Debtor acknowledges and is seeking to rectify the reporting and disclosures to comply with its obligations under the Bankruptcy Code and Bankruptcy Rules.

### A. Movants Cannot Satisfy the Objective Futility Prong

In the Fourth Circuit, the "objective futility" prong of the § 1112(b)(4) "bad faith" test is designed to test whether there is any "realistic possibility of an effective reorganization." *In re Premier Auto. Servs., Inc.*, 492 F.3d at 280 (quoting *Carolin*, 866 F.2d at 698). Movants argument on this prong is conclusory, at best, citing Debtor's lack of information and candor and Inveniam's financial woes as proof that Debtor's reorganization attempts are futile.

This Case was filed approximately one month ago. It was filed as an emergency. Debtor has worked diligently to deal with a myriad of issues, including securing debtor-in-possession financing. Debtor has submitted schedules, has worked with the United States Trustee's office to comply with its obligations, has filed its first Monthly Operating Report, and has tried to be as forthright as possible under the circumstances. Debtor intends to attend and participate in its section 341 meeting of creditors. In short, Debtor has and will continue to diligently pursue its reorganization efforts and strives to be as transparent as possible. That Movants find Debtor's efforts insufficient is not a reason to doubt that Debtor will affect a reorganization given the breathing room that bankruptcy is supposed to afford.

While Inveniam may be experiencing some issues of its own, it provided the debtor-in-possession financing approved by this Court on an interim basis without issue and on schedule. Debtor is judiciously using those funds to right-size and streamline its operations, including retaining financial advisors experienced in consulting financially distressed companies, and to shed burdensome contracts.

Finally, Bankruptcy Code section 1121(b) gives debtors 120 days from the order of relief to file a plan before losing exclusivity. This case is only 30 days old. It is premature for Movants to seek dismissal on objective futility grounds when the Bankruptcy Code itself envisions reorganizations taking at least 120 days.

Since Movants make essentially no argument on the objective futility prong and since Debtor is taking active steps towards reorganization, Movants have failed to satisfy their burden under 11 U.S.C. § 1112(b)(4) to demonstrate "cause" exists to dismiss this Case. As such the Motion should be denied.

**B. Movants Cannot Satisfying the Subjective Bad Faith Prong**

Since the Movants have not met the objective futility prong, the Court need not consider the subjective bad faith prong. To the extent, however, the Court finds it necessary to consider Debtor's good faith, as discussed above, in examining what constitutes "subjective" bad faith, courts have derived a list of common factors:

> 1. The debtor has one asset;
> 2. Secured creditors' liens encumber the asset;
> 3. There are generally no employees except for the principals and there is no ongoing business activity;
> 4. The debtor has little or no cash flow and no available sources of income to sustain a plan of reorganization or make adequate protection payments;
> 5. There are few, if any, unsecured creditors whose claims are relatively small;
> 6. There are allegations of wrongdoing by the debtor or its principals;
> 7. The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of secured creditors to enforce their rights;

8. The debtor is afflicted with the "new debtor's syndrome" in which a one asset entity is credited or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors;
9. There is no realistic possibility of reorganization of the debtor's business;
10. The reorganization essentially involves a two-party dispute; and
11. Bankruptcy offers the only possibility of forestalling loss of the property.

*In re Kincaid*, 2001 WL 1806039, at * 6–7 (Bankr. D. S.C. Nov. 16, 2001). Movants cite none of these factors. Instead, Movants point to Debtor's alleged inappropriate venue and lack of disclosure only 30 days after an emergency petition filing as sufficient "cause".

First, Debtor has acknowledged and is working to rectify the issues regarding its disclosures.

## IV. THE COURT SHOULD RETAIN VENUE OVER THIS CASE

Movants also seek dismissal pursuant to 28 U.S.C. § 1406(a) and Bankruptcy Rule 1014.

**WHEREFORE**, the Debtor respectfully requests the Court deny the Motion and grant any additional relief deemed appropriate by the Court.

Respectfully Submitted

*/s/ Christopher R. Arthur*

Christopher R. Arthur (WVSB #9192)
SPILMAN THOMAS & BATTLE, PLLC
300 Kanawha Blvd. E.
Charleston, WV 25301
(304) 720-4090 *(Phone)*
carthur@spilmanlaw.com
***Counsel for Storj, Debtor-in possession***

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **STORJ LABS INC.,** | ) | **Case No. 5:26-bk-0012** |
| | ) | |
| **Debtor.** | ) | **Chapter 11 Reorganization** |
| | ) | |

**CERTIFICATE OF SERVICE**

I, Christopher R. Arthur, hereby certify that on September 8, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice to all parties participating in the same, including:

Shari Lynne Collias, Esquire
Trial Attorney, Office of the U.S. Trustee
United States Courthouse, Room 2025
300 Virginia Street, East
Charleston, WV 25301
Telephone: (304) 347-3417
Facsimile: (304) 347-3402
shari.collias@usdoj.gov
*Counsel for U.S. Trustee*

*/s/ Christopher R. Arthur*
Christopher R. Arthur (WVSB #9192)