**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **STORJ LABS INC.,** | ) | **Case No. 5:26-bk-00512** |
| | ) | |
| **Debtor.** | ) | **Chapter 11 Reorganization** |
| | ) | |

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS FOR LACK OF VENUE, OR IN THE ALTERNATIVE TO TRANSFER CASE TO PROPER VENUE**

Debtor Storj Labs, Inc. ("Debtor") files this response in opposition to "Motion to Dismiss for Lack of Venue, or in the Alternative to Transfer Case to Proper Venue" (ECF No. 128). In support of the response, Debtor states as follows:

## INTRODUCTION

The Debtor filed for chapter 11 bankruptcy relief on July 26, 2026 in the Northern District of West Virginia, Virginia. Due to various creditors threatening to stop certain services, the Debtor had to file an emergency bankruptcy which required the Debtor to expedite the filing over the weekend of July 25th. In today's technological world, certain companies do not have principal places of business. The Debtor is one of those companies who do not have physical locations anywhere in the world. However, these technological entities have creditors and customers throughout the world, including throughout the United States. Here the debtor has no principal place of business; however, it does use a virtual mailbox in Atlanta, Georgia. The virtual mailbox with an address in Atlanta Georgia is not a physical location that someone can go to a post office box. Instead, it is a virtual holding place where all interaction with the Debtor occurs over Internet base technology/the cloud.

The Debtor has no other contacts in the state of Georgia. When filing the chapter 11 bankruptcy, the undersigned counsel spent a great deal of time, trying to figure out how to complete certain sections of the chapter 11 initial filing due to the complexity related to a company that has no physical presence in the United States and no physical presence anywhere in the world. Like companies in the United States, the Debtor incorporated in the state of Delaware. The Debtor has no other contact with the state of Delaware with exception of the incorporation. Conversely, the Debtor has customers in the state of West Virginia. Moreover, the state of West Virginia currently is somewhat a hot bed for activity as a relates to data storage, which is reflected by the various announcements by the governor of the State of West Virginia regarding new data centers being constructed. Unlike data centers that require a physical location, the Debtor uses technology to assimilate data from companies that have not used or have excess space regarding data storage and selling that access space to companies that need additional storage space. Debtor developed software that assimilates data space from one entity, sells that data to and stored in the cloud. Hence, the Debtor does not require a physical facility or an environmental footprint to store data. Of additional note, the Debtor has eleven (11) employees. Only one engineer resides in the United States in Missouri.

Mark Harvilla and Nikhil (the “Objecting Parties”) do not challenge this Court’s jurisdiction and do not oppose the Debtor’s motion for final DIP financing. If the Debtor is unable to make payroll on September 24th, it will have no practical alternative but to convert this case into a Chapter 7 liquidation. The Debtor further submits that the Court has discretion to retain venue, particularly under the convenience-of-the-parties analysis. Debtor’s counsel is in West Virginia. Inveniam Capital Partners Inc.’s chief executive officer, chief operating officer, and general counsel are in the Pittsburgh, Pennsylvania area. Mr. Harvilla is familiar with the Wheeling area

because he graduated from Carnegie Mellon. Mr. Ward and Mr. Lamb reside overseas but have retained Pittsburgh-based counsel. As explained below, no party has a legitimate basis to transfer this bankruptcy case to Georgia other than to hinder the Debtor's ability to propose a viable chapter 11 plan. For example, Mr. Harvilla is a former Debtor executive and now operates a company that competes with the Debtor. The Debtor also intends to object to the filed proofs of claim, and those objections will be addressed in a filing before the hearing.

## APPLICABLE LAW

When faced with a misfit toy that does not fall under the traditional rules of venue, the Court must look to venue and what will generate the best outcomes for creditors, the Debtor, its employees, and customers. The Debtor has more than 104,000 customers who could suffer substantial harm. The Debtor pays monthly income to approximately 11,000 entities and/or individuals who sell their excess space to the Debtor. The Debtor also has eleven (11) employees who will lose their respective employment if the final DIP is not approved.

Rule 1001 of the Federal Rules of Bankruptcy Procedure provides that the judicial goal of the bankruptcy court is to construe the rules so as to secure the just, speedy, and inexpensive determination of every case and proceeding. FED. R. BANKR. P. 1001. As such, venue considerations in bankruptcy cases are much different than venue considerations for district court civil litigation. Congress endorsed such a "bankruptcy venue is different" approach by enacting bankruptcy-specific venue statutes: 28 U.S.C. §§1408, 1409 and 1412, among others. The venue considerations of "convenience of the parties or in the interest of justice" recognize the special circumstance of the bankruptcy case. The general venue rules applied to general civil litigation filed in federal courts. Section 1412 of Title 28 states:

A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties. 28 U.S.C. § 1412. The statute *permits* rather than authorizes. This permissive language allows a district court *not* to transfer a case if the interest of justice or the convenience of the parties dictates. *See In re Boeckman,* 54 B.R. 110, 111 (Bankr.D.S.D.1985). The bankruptcy court of a district in which is filed a case or proceeding laying venue in the wrong ... district may, in the interest of justice and for the convenience of the parties, retain such case or proceeding, or may transfer, under Section 1475 of this title, such case or proceeding to any other district ...28 U.S.C. § 1477(a). Congress seems to have recognized that venue considerations in bankruptcy cases are decidedly different from venue issues in general civil litigation (else why enact special venue provisions for bankruptcy cases. The hallmark for venue issues in Title 11 cases should be maximum flexibility, leaving to the courts the ability to move or not move bankruptcy cases ("[t]he district court *may* transfer ..."), depending, in the words of the statute, on "the interest of justice and the convenience of the parties." 28 U.S.C. § 1412.

Certainly this emphasis on broader, equitable considerations in bankruptcy cases is reflected in other procedural statutes as well. For example, removal in federal civil litigation is closely circumscribed, but removal in bankruptcy cases is broad, automatic, and governed by principles of equity. *Compare* 28 U.S.C. § 1441 *with* 28 U.S.C. § 1452. Interestingly, the language of Section 1412 itself all but mandates that retention be a legitimate alternative regardless of whether venue is proper or not. The only statute directly relating to "change of venue" in bankruptcy cases found in Title 28 facially applies to *any* request for a change of venue, regardless of the reason and regardless of who asks for the change. Therefore, even requests for change of venue made by creditors who maintain that change is appropriate because venue was

improper are nonetheless governed by Section 1412. Section 1412 itself then directs courts considering *transfer* to first consider the interest of justice and the convenience of the parties. Presumably, if the interest of justice and the convenience of the parties do not warrant transferring the case, then, under the statute, the court would be abusing its discretion if it *did* transfer the case, regardless of whether venue is improper in the first instance. Thus, retention must be the logical consequence of a court's decline to transfer venue.

Nor does this interpretation invite abuse by debtors, though even if it did, it remains for Congress to fix the problem. It would seem that courts evaluating "the interest of justice" are well-advised to consider whether the debtor has been engaging in forum-shopping, and to transfer the case if that is what they conclude is going on. Section 1412 gives the court ample authority therefore to discourage abuse. By the same token, the flexibility built into Section 1412 prevents bankruptcy's equitable proceedings from being held hostage to inequitable procedural rules only marginally related to the realities of the bankruptcy process. Several bankruptcy courts have concluded that a bankruptcy court can maintain venue of a case filed in the improper venue in the interest of justice and for the convenience of the parties. *In re United States Aviex Co., Inc.,* 96 B.R. 874, 882 (N.D.Ind.1989); *In re Baltimore Food Systems, Inc.,* 71 B.R. at 804; *In re Leonard,* 55 B.R. at 110; *In re Boeckman,* 54 B.R. at 111; *In re Butcher,* 46 B.R. 109, 112 (Bankr.N.D.Ga.1985); *but see In re Pick,* 95 B.R. 712, 715–16 (Bankr.D.S.D.1989); *In re Cunningham,* No. 88–4045, slip op. at 7 (D.S.D. Sept. 30, 1988) [1988 WL 148642]; *In re Townsend,* 84 B.R. 764, 766–67 (Bankr.N.D.Fla.1988); *In re Greiner,* 45 B.R. 715, 716 (Bankr.D.N.D.1985). *Collier* also suggests that the authority to dismiss a case for improper venue does not appear to have been conferred by Section 1412, and should not be read in. 1 *Collier on*

*Bankruptcy,* ¶ 3.02[4][d][ii] (15th ed. 1991). Lacking such authority, the only alternative to transfer would, under *Collier,* appear to be retention.

Transfer to Georgia would *not* be convenient for any party. Creditors are spread throughout the country. The Supreme Court has recognized Congress' intent to treat venue differently for different types of cases. *See Fourco Glass Co. v. Transmirra Products Corp.,* 353 U.S. 222 (1957); *Citizens & Southern Nat. Bank v. Bougas,* 434 U.S. 35, 44 (1977); *EEOC v. Arabian American Oil Co.* 449 U.S. 244, 256 (1991). For example, in addressing venue pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 9-11, the Supreme Court stated that "attention to practical consequences thus points away from the restrictive reading of §§ 9-11 and confirms the view that the liberalizing effect of provisions in the day of their enactment was meant to endure through treating them as permitting, not limiting, venue choice today." *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co., Etc.,* 529 U.S. 193, 199 (2000). The Federal Arbitration Act allows the parties to an arbitration agreement to contract the proper venue within which to resolve issues between them, regardless of the traditional venue requirements under federal law. Although the "authority of these [venue] cases is not that special venue statutes are deemed to be restrictive; they simply show the analysis of special venue provisions must be specific to the statute." *Cortez Byrd Chips,* 529 U.S. at 204.

Examples of further distinctions between bankruptcy specific statutes can be seen in other areas of Title 28 as well. 28 U.S.C. §1441(2006) provides that only a defendant may remove a civil action to the United States district court or bankruptcy court, while 28 U.S.C. §1452(a) (2006) allows any party to move to remove any claim or cause of action in a civil action in state court to the bankruptcy court (with limited exceptions as to the nature of the action, not the party). The comparison of these two statutes indicates congressional recognition that the bankruptcy court, a

court of equity, must incorporate other equitable considerations and factors in reaching the scope and purpose of the Bankruptcy Code.

**CONCLUSION**

**WHEREFORE**, the Debtor respectfully requests the Court deny the motion to dismiss or in the alternative convert to Northern District of Georgia.

**STORJ LABS, INC.**

**By Counsel:**

*/s/ Christopher R. Arthur*

Bruce Jacobs (WV Bar No. 6333)
Christopher R. Arthur (WV Bar No. 9192)
Spilman Thomas & Battle, PLLC
300 Kanawha Boulevard, E. (25301)
P. O. Box 273
Charleston, WV 25321
304.340.3800; 304.340.3801 (*facsimile*)
carthur@spilmanlaw.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **STORJ LABS INC.,** | ) | **Case No. 5:26-bk-00512** |
| | ) | |
| **Debtor.** | ) | **Chapter 11 Reorganization** |
| | ) | |

## CERTIFICATE OF SERVICE

I, Christopher R. Arthur, counsel for defendant STORJ LABS INC., do hereby certify that on September 15, 2026, I filed the foregoing ***Response in Opposition to Motion to Dismiss for Lack of Venue, or in the Alternative to Transfer Case to Proper Venue*** with the Clerk of the Court using the CM/ECF system, which will send notification of any parties participating in the CM/ECF system.

*/s/ Christopher R. Arthur*
Christopher R. Arthur (WV Bar No. 9192)